NATHAN M. LEVINE, PLAINTIFF-APPELLANT, v. HADDON HALL HOTEL, LEED & LIPPENCOTT CO., AND CHALFONTE HADDON HALL, DEFENDANTS-RESPONDENTS, AND SECOND INJURY FUND, DEFENDANT-RESPONDENT.

Reargued November 4, 1974—Decided February 5, 1975.

416

*Mr. Robert McAllister* argued the cause for plaintiff-appellant (*Messrs. Valore, McAllister, Aron & Westmoreland,* attorneys).

*Mr. James D. Carton, III* argued the cause for defendants-respondents (*Messrs. Carton, Nary, Wilt & Arvanitis,* attorneys; *Mr. Carton* on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for defendant-respondent, Ronald M. Heymann, Commissioner of Labor & Industry as Trustee of the Second Injury Fund (*Mr. George F. Kugler, Jr.,* former Attorney General of New Jersey), filed statement in lieu of brief; *Mr. Robert C. Leventhal,* Deputy Attorney General, on the statement.

The opinion of the Court was delivered by

PASHMAN, J. This workmen's compensation case calls upon us once again to decide whether an accident occurring prior to an employee's arrival on his employer's premises is within one of the exceptions to the "going and coming" rule. Plaintiff Nathan Levine was a part-time employee in the timekeeping department of respondent Haddon Hall Hotel. Mr. Levine was 69 years of age at the time of the accident giving rise to the claim herein. Although he walked with a cane outdoors, it was not necessary to aid his ambulation when indoors. He was usually at work some time between 8 and 9 o'clock in the morning, depending upon the work schedule. While plaintiff's disability did not require that he travel to and from work by cab, he preferred it to public transit as a means of preserving his strength.

On the morning of July 4, 1970, Mr. Levine had difficulty obtaining a cab.[1] After waiting for half an hour, his concern about not getting to work on time prompted him to call for permission to take a jitney (mini-buses which run along Pacific Avenue in Atlantic City). He alighted at the corner of North Carolina and Pacific Avenues, the intersection closest to the hotel and at the nearest point to the hotel to which he could take any public transportation. After checking to see if the traffic light was in his favor, plaintiff attempted to cross the street. He was struck by a laundry truck and received injuries which are the subject of this claim.

The main issue before the Judge of Compensation was whether the facts were an exception to the "going and coming" rule. On appeal from a determination in favor of plaintiff, the Appellate Division reversed in an unpublished opinion, holding that the facts did not fall within any of the recognized exceptions to the rule. Petition for certification was granted. 64 *N. J.* 325 (1974). We find the case of *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970), to be substantially controlling; *DiNardo v. Newark Board of Education,* 118 *N. J. Super.* 536, 539 (App. Div. 1972) is further supportive.

There is no doubt that had plaintiff driven to work on an ordinary workday, parked in a hotel lot one or two blocks away[2] and been injured in the lot or crossing an intersec-

---

[1]Although plaintiff was to receive doubletime pay to compensate for his working on a holiday, he was regularly scheduled to work on July 4 and was to report at the usual hour.

[2]In his findings, the Judge of Compensation noted that respondent allowed the employees to park "either at its parking lot on North Carolina or on its parking lot a block away on South Carolina." The hotel's paymaster, Mr. Scull, testifying in place of the resident manager, indicated that the hotel had an additional lot on Virginia Avenue two blocks away, "where the overflow goes . . ." We also accept the findings of the Judge of Compensation with regard to the distances involved between the accident site and the respondent's premises as well as the location of the parking lot.

tion while walking to the employer's premises, he would have come within the recognized exception to the "going and coming" rule. *Hammond, supra; Lewis v. Walter Scott & Co., Inc.,* 50 *N. J. Super.* 283 (App. Div. 1958); 1 *Larson, Workmen's Compensation Law,* § 15.14. See *Zabriskie v. Erie R. R. Co.,* 86 *N. J. L.* 266 (E. & A. 1914); *Rice v. Pharmaceuticals, Inc.,* 65 *N. J. Super.* 579 (App. Div. 1961); *Buerkle v. United Parcel Service,* 26 *N. J. Super.* 404 (App. Div. 1953). Since it was the Fourth of July, however, employees who normally drove to work could not use the parking lots usually reserved for them. This was the customary practice during the busy season and holidays; hotel guests utilized employee parking areas. The absence, on the day of Mr. Levine's accident, of employee use of employer-provided parking facilities distinguishes this case from *Hammond* and *DiNardo.* We feel that this is a distinction without difference.

In *Hammond, supra,* an employee was injured while walking to the point where she usually waited for a ride from a co-employee who parked in the company lot. As is true of plaintiff herein, Mrs. Hammond had difficulty walking. She did not want to traverse the broken sidewalk between her place of employment and the parking facilities. Instead, she proceeded to a nearby corner to await transportation. Her walk to a place other than that provided employees for parking did not preclude compensation. *56 N. J.* at 15. Mrs. Hammond's injuries occurred in the course of her employment and in a place where she might normally be. The accident arose out of her employment since it resulted from a risk reasonably incidental to the employment.

Plaintiff herein should not be denied compensation because he availed himself of public transportation rather than obtaining a ride from a co-employee. *DiNardo, supra.* In *DiNardo,* petitioner had exited from a school building where she worked in the cafeteria. While en route to a bus stop, her heel caught in a crack in the sidewalk adjacent to the school. The resultant injuries were held compensable

within our workmen's compensation statutes. The court therein noted that whether she was walking along the sidewalk either preparing to enter the building or after leaving, "she was in an area where she might reasonably be, and at a time when her presence there would normally be expected." 118 *N. J. Super.* at 539. Whether one is walking to or from work under the facts in the instant case is of no consequence.[3] That the employer did not control the locus of injury is irrelevant. *Lewis v. Walter Scott & Co., Inc., supra,* 50 *N. J. Super.* at 287.

As in *Hammond* and *DiNardo,* this respondent expedited the arrival of its employees who drove to work by providing parking facilities. Those who do not avail themselves of such facilities are covered by our Workmen's Compensation Act in these circumstances. *Hammond; DiNardo.* We will not deny petitioner compensation because, as in the instant case, the employer desires to provide additional parking for hotel guests and to that end temporarily deprives employees of the facilities they are normally permitted to utilize.

A word as to the dissent. We need not consider here the question of whether the "going and coming" rule should be abandoned. Our holding further emphasizes that the rule should be liberally construed within the spirit of the Workmen's Compensation law. The statement in *Hammond, supra,* and *DiNardo, supra,* as to the narrowness of the is-

---

[3]The court in *DiNardo* did not address itself to the distance from the school premises to the parking lot but mentioned only that the injury occurred while petitioner was on a sidewalk adjacent to the premises. [118 *N. J. Super.* at 539]. In *Hammond,* 56 *N. J.* at 10, the "distance from respondent's buliding to the point where [petitioner] waited for her ride was substantially less than the distance from the building to the parking lot." The Judge of Compensation in the case now before this Court found that the intersection where the accident occurred was approximately 715 feet from respondent's premises but within the same block. The judge then noted that the lot most often used by employees was one block away.

sue therein is a familiar one. The exceptions to the "going and coming" rule which have developed since its formulation are too numerous to mention. A most thorough and comprehensive discussion can be found in 1 *Larson, Workmen's Compensation*, § 15.13 *et seq.* See also Horovitz, 14 *NACCA L. J.* 36, 37–46 (1954); Horovitz, "Workmen's Compensation: Half Century of Judicial Developments," 41 *Neb. L. Rev.* 1, 49–59 (1961). Each exception has been carved out of the general rule and each exception is a narrow one. These are the accidents which succumbed to equitable considerations guiding the Court in interpreting such remedial legislation. The rule has come to be honored more frequently in its breach than in adherence to its mandate. And that is why our text writers have observed that the exceptions are so numerous that they have swallowed the rule.

We do not intend any classification of exceptions based on "outer perimeter." The facts in this case equitably cry out for compensation and we respond by including these facts in an exception previously carved out in *Hammond* and *DiNardo, supra.*

The judgment of the Appellate Division is reversed. The judgment of the Division of Workmen's Compensation is reinstated.[4]

CLIFFORD, J. (dissenting). The Court takes the position that this case is "substantially control[led]" by *Hammond v. The Great Atlantic & Pacific Tea Co.*, 56 *N. J.* 7 (1970), and "further support[ed]" by *DiNardo v. Newark Bd. of Educ.*, 118 *N. J. Super.* 536 (App. Div. 1972), authorities which, I submit, do not justify the award of compensation

---

[4] Upon discovering that petitioner's total disability resulted from the current injury as well as his prior paralysis, the Judge of Compensation directed petitioner to join the Second Injury Fund. In a statement in lieu of brief, the attorney general conceded petitioner's total disability and that it did not result from the last injury alone. He further noted that should the Judge of Compensation's decision be upheld, payment of Second Injury Fund Benefits should be made.

here. Any effort to enlarge those holdings and thereby create a further exception to the "going and coming" rule should be resisted, particularly in view of the pains to which the respective courts deciding those cases went to contain their precedential effect and the scope of their influence (*Hammond*: "the question presented by this appeal becomes a narrow one," 56 *N. J.* at 15; *DiNardo*: "The issue before us is a rather narrow one," 118 *N. J. Super.* at 538).

The majority's holding I take to be this: inasmuch as an employer-provided employee parking lot was more distant from the place of employment (albeit in a sharply divergent direction) than was the point at which petitioner was struck by a vehicle while walking from a bus stop to work, that accident occurred within some circumscribed area said to have been a basis for the approval of the award in *Hammond, supra,* and thus falls within one of our exceptions to the rule. That holding is based not only upon what I conceive to be a misreading of the law but also upon an interpretation of the facts with which I cannot agree in two critical respects, the first as to the nature of any employee parking arrangement and the second as to the location of the parking lot in question with relation to the accident point and the petitioner's place of employment.

The Haddon Hall Hotel is on the Boardwalk at Atlantic City. It is bounded on its south side by North Carolina Avenue. The Chalfonte Hotel, also on the Boardwalk, is directly across North Carolina Avenue from the Haddon Hall and presumably under the same ownership or management. The two structures are referred to indiscriminately in the record either by their separate names or as Chalfonte-Haddon Hall.

As with any large hotel (the Chalfonte-Haddon Hall has 1000 rooms) parking facilities were supplied for the guests. There was testimony at trial, supplemented by a map, regarding the location of those faciilties and the means of access to them, to which I shall refer below. The first point is that

their availability to employees was non-existent during the summer season, when this accident occurred, and severely limited at any other time. The arrangement, if such it be, was irregular at best.

As the majority indicates, during the busy season[1] and on holidays employees were not permitted to avail themselves of hotel-controlled areas, which were reserved entirely for guests. During those periods the employees had to park wherever they could find space, including on the public street. Employees could use whatever spaces were not occupied by guests between shortly after Labor Day and the beginning of the summer season, holidays excluded, on a "first-come, first-take" basis; the rest were left to their own devices. Clearly, no parking space was furnished to any employee (except supervisory personnel), either near the hotels or distant therefrom, when this accident happened. Of equal clarity is the lack of support in the record for the majority's reference to the lots as "usually reserved" for employees or as "employee parking areas" or as "facilities [employees] are normally permitted to utilize." They were plainly an accommodation for the hotel's paying guests, available to employees out of season only, on no systematic basis, and then only when not otherwise occupied.

The second point is that even assuming this case is to be decided in the context of an employer-provided employee parking facility, *Buerkle v. United Parcel Serv.*, 26 *N. J. Super.* 404 (App. Div. 1953); *Lewis v. Walter Scott & Co., Inc.*, 50 *N. J. Super.* 283 (App. Div. 1958); cf. *McCrae v. Eastern Aircraft*, 137 *N. J. L.* 244 (Sup. Ct. 1948), the majority's conclusion that the distance from the Haddon Hall to the parking lot was greater than the distance from Haddon Hall to the accident scene is erroneous.

------

[1] While I recognize that the area of judicial notice is circumscribed, I think it would permit the observation that the busy season for an Atlantic City hotel runs from the beginning of summer to shortly after Labor Day — from some time before to considerably after the accident date.

The judge of compensation made no specific finding with regard to those relative distances, but he did find that the accident site was 715 feet from the nearest edge of respondent's premises[2] and that a parking lot was "a block away" from North Carolina Avenue on which the Haddon Hall was located. Although the judge's language in his findings may be read as suggestive of two separate parking facilities, I understand the testimony and evidence to mean that there was in reality one lot directly adjacent to the Chalfonte at the rear.[3] Entrance was gained thereto either from North Carolina Avenue or from South Carolina Avenue. Anyone parking in this lot could walk through it to North Carolina Avenue, emerging directly across the street from the Haddon Hall. A map of part of the area, marked in evidence, indicates that the distance from the South Carolina Avenue side of the parking facility to the Haddon Hall Hotel is in the area of 415 feet, substantially less than the distance to the accident point. Hence, petitioner sustained his injuries considerably farther from the place of employment than the "block away" parking lot, clearly outside the critical area established by the majority.

If this factual analysis is correct, then obviously compensability cannot attach even under the novel exception created by today's decision. What remains is essentially nothing more than an accident occurring while the employee was traveling to work, not within any exception to the "going and coming" rule, and thus excluded under *Mayer v. John E.*

---

[2]There is no testimony to that effect in the record, so I assume the judge obtained the figure from P–4 in evidence, described as "a map of North Carolina Avenue from the Boardwalk to Pacific Avenue." My own examination of the map shows the distance from the intersection to the westerly boundary line of Haddon Hall property to be 873.17 feet. The difference of over 100 feet does not affect the result.

[3]The witness Steele, electrical foreman at Haddon Hall on the date of the occurrence, described the lot as being in two sections, with no building between them.

*Runnells Hosp.,* 129 *N. J. Super.* 77 (App. Div. 1973), aff'd *o. b.,* 65 *N. J.* 324 (1974). I would so hold.

But even accepting the assertion that there is in fact before us a parking lot which is (a) provided by the employer for use of employees, and is (b) farther from the place of employment than the accident site, I disagree with the majority's result.

That result turns, as I have suggested, on the notion that *Hammond v. The Great Atlantic & Pacific Tea Co., supra,* creates some kind of critical area; any kind of "going and coming" accident happening within this area will gain the benefit of an exception to the rule, entitling the employee to compensation. In *Hammond* the employer had provided an employee parking lot about 300 feet further away from the employer's building than the place where the accident occurred. Mrs. Hammond had, for four years preceding the accident, obtained a ride home from a co-employee who parked in the lot. Because of a physical deformity and because of the poor condition of the public sidewalk en route, Mrs. Hammond rarely walked to the lot herself. On the day of the accident she was proceeding toward the intersection between her place of employment and the parking lot, intending to await a ride on the far corner of that intersection, when she was injured in a fall.

In holding for compensability under those circumstances this Court reasoned that inasmuch as an injury occurring in a public street between the plant and the parking lot would be compensable to a user of the lot since it occurred between two portions of the employer's premises, *Lewis v. Walter Scott, supra,* Mrs. Hammond's shorter walk to a nearby corner in order to wait for her driver co-employee would not preclude compensation. It is apparent from the opinion that the petitioner's indirect use of the parking lot was a significant feature in the decision. Mrs. Hammond was in a place where she might reasonably have been expected to be — that is, given her physical condition and the deteriorating

sidewalk it was not unreasonable for her to wait on the corner for the ride which originated in the parking lot.

In this case Mr. Levine had no relationship whatsoever to any parking lot. He never drove himself to work, much less parked a car in a parking lot. He never rode with anyone who parked in a lot. He always used a taxi or other public transportation. The narrow decision of *Hammond,* carefully confined to its facts, cannot justify compensation either under the majority's novel theory or under any of the heretofore recognized exceptions to the "going and coming" rule.

*DiNardo v. Newark Bd. of Educ., supra,* cited as supportive authority, claims to be the legitimate offspring of *Hammond.* I cannot discern that bloodline, but in any event *DiNardo* (which, I repeat, begs for a narrow construction) is readliy distinguishable on its facts from the case *sub judice.* As pointed out in the majority opinion *ante* (pp. 418–419), petitioner in *DiNardo* fell on the public sidewalk abutting the employer's premises. The accident was held to be compensable for the reason, among others, that it happened in "an area as to which respondent, as the adjoining landowner, was subject to certain responsibilities," 118 *N. J. Super.* at 539. While maintenance as such was not determinative of the result, responsibility as to the sidewalk area was deemed significant. Here, Haddon Hall had no dominion or control over or "responsibility" with respect to the accident site, some seven or eight hundred feet from any part of its property. Whatever persuasive effect *DiNardo* may have, it does not apply here.

There is no precedent in this State which either expressly or impliedly supports the majority's unique exception. *Cf. Fischer v. Lincoln Tool & Die Co.,* 37 *Mich. App.* 198, 194 *N. W.* 2d 476 (Ct. App. 1971). It is neither logical nor equitable, and the situation does not justify — much less "cry out for" — compensation. The effort is to establish an outer perimeter within which "going and coming" accidents are compensable and beyond which they are not. The technique is to use the place of employment as the center of

a circle and the distance to the farthest reaches of an employer-provided employee parking lot as the radius. "Going and coming" accidents occurring within that circle, created in a patently arbitrary fashion, are now compensable. I see that concept as "impracticable of judicial administration and of but ephemeral foundation in any significant *nexus* between the journey and the employment," *Ricciardi v. Aniero Concrete Co.*, 64 *N. J.* 60, 63 (1973). A likely result is a gaggle of claims which I think should rightfully be barred.

I would affirm the Appellate Division's reversal of the judgment and order of the Division of Workmen's Compensation.

Justice SULLIVAN and Judge CONFORD authorize me to indicate their agreement with this opinion.

*For reversal* — Chief Justice HUGHES and Justices JACOBS, MOUNTAIN and PASHMAN—4.

*For affirmance* — Justices SULLIVAN and CLIFFORD and Judge CONFORD—3.