LAWRENCE E. WATSON, PETITIONER-APPELLANT, v.
NASSAU INN, RESPONDENT-RESPONDENT.

Argued April 4, 1977—Decided July 25, 1977.

*Mr. Ralph A. Real* argued the cause for appellant.

*Mr. Roland Vreeland* argued the cause for respondent (*Messrs. Connolly, Vreeland & Connolly,* attorneys).

The opinion of the court was delivered by

PASHMAN, J.  The issue in this case is whether the accident which resulted in petitioner's total disability arose out of and in the course of his employment within the intendment of the workers' compensation provisions. Although he termed this a difficult case, the judge of compensation dismissed petitioner's claim for benefits because he found that the accident occurred after the end of petitioner's work day and while he was engaged in a personal errand off his employer's premises. This conclusion was based on the "going and coming" rule, which generally excludes employer liability for injuries sustained during routine travel to and from work. The Appellate Division affirmed and we granted certification. 71 *N. J.* 532 (1976).

The petitioner, Lawrence Watson, had been a waiter in the dining room and cocktail lounge of the defendant, Nassau Inn, in Princeton, New Jersey since it opened in 1937. By 1973, when he was disabled in the accident which is the

subject of this appeal, he had settled into a pattern of working at the Inn from September to April and spending the summer season at vacation resorts in Florida and the New Jersey shore. He was the senior waiter at the Inn,[1] and his superiors held him in high regard as an honest and trustworthy employee.

Petitioner's home was in Asbury Park, but he lived in a rented room in Princeton during most of the week because public transportation between the two towns was sporadic and inconvenient. He received no reimbursement from defendant for his travelling or living expenses, but he was permitted to arrange his work schedule to facilitate the weekly trip. The union contract required waiters to serve two meals a day for five straight days. Petitioner, however, was allowed to serve the requisite ten meals a week over six days, beginning with dinner on Saturday and extending through lunch on Thursday. This split schedule enabled him to obtain a ride home from a co-worker, Robert Miller, who also lived in Asbury Park. Miller's schedule was also arranged to allow for this Thursday car pool. On Saturday mornings, petitioner would return to Princeton by bus, arriving in time for the evening meal.[2]

The Inn manager testified at the hearing before the compensation judge that the routine of the two men was primarily for the convenience of petitioner. However, he also stated that it worked out satisfactorily and conceded that the Inn derived benefits to the extent that it maintained petitioner's continued service.

On the afternoon of November 1, 1973 (a Thursday), petitioner left work and walked across the street to meet

---

[1]He was 72 years old at the time of the accident.

[2]Petitioner did not finish his lunch duty until 2:30 p.m. on Thursday afternoons and so he was unable to take the last direct bus from Princeton to Asbury Park, which departed at 2 p.m. In previous years there had been direct train service between the two towns but the only train service available at the time of the accident was via Newark.

Miller in a parking lot maintained by Palmer Square, Inc., defendant's parent company. Miller was given an employee sticker and permitted to park his car in the lot free of charge. Since Miller was still working, petitioner crossed the lot and walked another two blocks to his rented room. There he picked up his suitcase containing soiled work clothes which he intended to take back to Asbury Park to clean for the next week's work.[3] He then started back to the parking lot to meet Miller. About a half block from the parking lot, petitioner was suddenly struck by a tree which was uprooted by the stiff wind which was blowing at the time. The accident caused severe injuries, and petitioner was hospitalized and in nursing care for the next year. He did not return to work. After determining non-compensability, the judge of compensation made supplemental findings for the purposes of appeal in which he concluded that petitioner was totally and permanently disabled.

The going and coming rule is a judicially created doctrine which ordinarily precludes the award of workers' compensation benefits for accidental injuries sustained during routine travel to and from an employee's regular place of work. *Ricciardi v. Damar Products Co.*, 45 *N. J.* 54, 61 (1965); *O'Brien v. First Nat'l Bank & Trust Co.*, 37 *N. J.* 158, 162–163 (1963); *Moosebrugger v. Prospect Presbyterian Church*, 12 *N. J.* 212, 214 (1953); *Gullo v. American Lead Pencil Co.*, 119 *N. J. L.* 484, 486 (E. & A. 1938); 1 *Larson, The Law of Workmen's Compensation* (1972 ed.), §§ 14–19.63. Although by no means compelled under the broad statutory language defining compensable accidents as those "arising out of and in the course of [the] employment," *N. J. S. A.* 34:15–7, the rule was established as a

---

[3]The manager of the Inn testified that waiters wore standard outfits consisting of a white shirt, black bow tie, black pants and jacket. The Inn supplied and cleaned the jacket and the waiters were responsible for maintaining the rest of the wardrobe at their own expense. They were expected to be neat and presentable.

convenient formula for separating work-connected risks from those which are unrelated to employment. *Gullo v. American Lead Pencil Co., supra,* 119 *N. J. L.* at 486. It rests on the assumption that "an employee's ordinary, routine day-to-day journey" to and from work at the beginning and at the end of the day neither yields a special benefit to the employer, *see Ricciardi v. Aniero Concrete Co.,* 64 *N. J.* 60, 61 (1973), *Bergman v. Parnes Brothers, Inc.,* 58 *N. J.* 559, 568 (1971) (Francis J., concurring), nor exposes the employee to risks which are peculiar to the industrial enterprise. *Gilroy v. Standard Oil Co.,* 107 *N. J. L.* 170, 172 (E. & A. 1930); *Fenton v. Margate Bridge Co.,* 24 *N. J. Super.* 450, 457 (App. Div. 1953), certif. den. 12 *N. J.* 350 (1953).

The application of the going and coming rule in particular cases has spawned numerous exceptions over the years which are in keeping with the remedial objectives of industrial accident insurance. *O'Brien v. First Nat. Bank & Trust Co., supra,* 37 *N. J.* at 163. *See Levine v. Haddon Hall Hotel,* 66 *N. J.* 415 (1975); *White v. Atlantic City Press,* 64 *N. J.* 128 (1973); *Strzelecki v. Johns-Manville,* 65 *N. J.* 314 (1974): *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970); These exceptions have so proliferated that it has become commonplace to observe that they have overshadowed the basic rule. *Levine v. Haddon Hall Hotel, supra,* 66 *N. J.* at 420; *Hornyak v. The Great Atlantic & Pacific Tea Co.,* 63 *N. J.* 99, 104 (1973), and cases cited.

Doubts have been expressed as to whether the policies supporting the rule continue to be viable, *see, e.g., White v. Atlantic City Press, supra,* 64 *N. J.* at 134; *Hammond v. The Great Atlantic and Pacific Tea Co., supra,* 56 *N. J.* at 11; *Ricciardi v. Damar Products Co., supra,* 45 *N. J.* at 61. Nonetheless, a majority of the Court has never been willing to adopt an alternative formulation which allows recovery for injuries during the employee's trip to and from work. *See Mayer v. John E. Runnells Hosp.,* 65 *N. J.* 324 (1974); *Ricciardi v. Aniero Concrete Co., supra; Hornyak v. The Great Atlantic & Pacific Tea Co., supra,* 63 *N. J.* at 104–105.

However, these qualms have led the Court to pay closer heed to the danger of permitting the going and coming exclusion to yield inequitable results which will frustrate the beneficent purposes of the act. Thus, we have not been hesitant to make exceptions to the rule when the facts of a particular case have justly deserved a finding of compensability. *See, e.g., Levine v. Haddon Hall Hotel, supra,* 66 *N. J.* at 420.

Petitioner in this case argues that the totality of circumstances surrounding his accident warrant such an equitable approach. He also urges us to discard the going and coming rule and instead provide coverage from "portal to portal." Although a present majority of the Court is unwilling to follow the latter course, we agree that petitioner's accident is compensable since it arose out of and in the course of his employment.

We begin by noting that petitioner's unusual routine was fully integrated into the operations of the Inn. Management agreed to his deviation from the contractual work schedule, and even assisted in coordinating petitioner's assignments with those of Miller, knowing that petitioner was dependent upon Miller for his weekly ride to Asbury Park. In addition, the manager of the Inn testified that petitioner was a reliable, trustworthy employee whose services were beneficial. While the judge of compensation found that this arrangement was primarily for his personal convenience, and not for the benefit of the Inn, our decisions indicate that the concept of an employer benefit does not necessarily exclude activities which primarily serve employee interests.

Most recently, in *Mikkelsen v. N. L. Industries,* 72 *N. J.* 209 (1977), a unanimous Court held that attendance at a union meeting called for the purpose of ratifying or rejecting a proposed collective bargaining contract was an activity which simultaneously benefitted the employer and employee. We recognized the potentially antagonistic elements of the employer-union relationship and that union members' primary interest in such a meeting is in promoting their own interests, *id.* at 217. Nevertheless, we emphasized the mutual

interests "in preventing industrial strife and unrest, and in promoting the uninterrupted operation of an enterprise." *Id.* *See also Salierno v. Micro Stamping Co.*, 72 *N. J.* 205 (1977). *Mikkelsen* followed a long line of cases finding a "mutual benefit" in employer-sponsored or approved activities away from the work place. *See, e.g., Strzelecki v. Johns-Manville, supra* (education course); *Ricciardi v. Damar Products Co., supra* (company picnic); *Complilano v. Steel & Alloy Tank Co.*, 34 *N. J.* 300 (1961), rev'ing on dissenting opinion below, 63 *N. J. Super.* 444, 469 (App. Div. 1960) (company softball team).[4]

We concede that the Inn's accommodation of petitioner's commuting schedule represents a more attenuated instance of an employer benefit and would not, standing alone, warrant application of the mutual benefit doctrine. Yet it seems anomalous to ascribe such weight to the employer's concern in peaceful labor relations, employee morale or extra training, when it should be obvious that the employee's continued service and prompt attendance are essential to their working relationship. *See Hammond v. The Great Atlantic & Pacific Tea Co., supra,* 56 *N. J.* at 12–13 and n. 3; *Ricciardi v. Damar Products Co., supra,* 45 *N. J.* at 61. Even though full acceptance of this argument would dictate the abolition of the going and coming rule itself — a choice rejected above (at 160), it does undercut the finding below that the Inn derived no benefit from petitioner's unusual commuting arrangements.

With this in mind, we turn to the specific features of petitioner's accident. We note that there are two facts which are critical. First, the trip to petitioner's rented room was for the purpose of retrieving his soiled work clothes which had to

---

[4]Significantly, the mutual benefit doctrine was applied in *Mikkelsen* even though the claimant's injuries occurred as he was returning home from the union meeting. 72 *N. J.* at 218. This, too, was in accord with the precedents. *Strzelecki v. Johns-Manville, supra* ("special errand" exception); *Ricciardi v. Damar Products Co., supra* (same).

be cleaned before he returned on the following Saturday to serve the evening meal. The Inn instructed its waiters to present themselves in a standard uniform, thus limiting petitioner's choice of dress and requiring repeated use of the same articles of clothing. Furthermore, petitioner's appearance in his line of work was directly related to the general atmosphere of the restaurant and the tips he personally received from customers. Had his injury occurred on the defendant's premises while he was caring for his appearance, there is no doubt that his activity would have been considered work related. *See generally* 1 *Larson, supra,* § 21.64. And if a mishap during a meal had required him to return to his rented room to change his soiled clothes, it seems probable that his departure would be considered a "special errand." *Cf. Robinson v. Levy,* 20 *N. J. Misc.* 444 (W. C. B. 1942).

Petitioner argues that the same rationale provides a basis for compensation in this case. However, since there was no immediate necessity for the trip[5] and petitioner received no specific instructions, we are unable to rest our decision solely on that ground. But the purpose of this errand does establish a continuing link to his job which dispels any suggestion that petitioner was on a purely personal trip which might be construed as an abandonment of employment.

The second critical fact is that petitioner's accident occurred before he departed from work by his usual means of transportation. Since petitioner's detour to his rented room was related to, if not compelled by, his employment with the Inn, we conclude that compensation is dictated by our decisions in *Levine v. Haddon Hall Hotel, supra,* and *Hammond v. The Great Atlantic & Pacific Tea Co., supra.* Those two cases augmented the well-established exception to the going

---

[5]Petitioner had access to a locker on the premises of the Inn but it was not large enough to store his suitcase. Although in previous years a guard had been on duty to prevent thefts, no such security was provided at the time of the accident. Miller stated that he used the lockers to store his coat and shoes, not his regular work clothes.

and coming rule allowing coverage for travel between separate parts of an employer's premises. *See McCrae v. Eastern Aircraft,* 137 *N. J. L.* 244 (Sup. Ct. 1948); *Buerkle v. United Parcel Serv.,* 26 *N. J. Super.* 404 (App. Div. 1953); 1 *Larson, supra,* § 15.14.

The claimant in *Hammond,* like the petitioner here, relied on a fellow employee for a ride home from work. Her friend's car was parked in a company lot located a few blocks from the office building where the two women worked. Because the claimant had difficulty walking, she usually waited for her friend at a point between the office building and the lot. Although she was not on her way to any part of the employer's premises when her accident occurred, the Court held that she should not be denied compensation because of her shorter walk. "She was in a place where she might 'reasonably be' considering the condition of the public streets and sidewalks and her pre-existing physical condition." 56 *N. J.* at 15.

In *Levine,* the claimant used public transportation to travel to work on a holiday when his employer's parking lots were closed to employees. He was injured after alighting from the bus at a street corner within a block of the hotel where he was employed. Although it was not his habit to use the employee parking lots on other days, we refused to deny coverage simply because he chose to commute by public transportation. 66 *N. J.* at 418–419. *See DiNardo v. Newark Board of Education,* 118 *N. J. Super.* 536 (App. Div. 1972) (injuries sustained while enroute to bus stop held compensable).

The factual similarities of those decisions to this case are apparent. In authorizing its employees to park their cars in the adjacent lot, defendant expected that they and their riders would make the brief trip from the Inn to the lot at the end of the day before leaving for home. And to the extent that this trip subjected its employees to the common risks of the street, it also foresaw that it would incur liability if conditions beyond its control resulted in injuries to its employees.

We recognize, of course, that here petitioner was just beyond the boundaries of the parking lot when his accident occurred. The compensation judge below distinguished *Hammond* and *Levine* on this ground, holding that petitioner's injuries were not compensable since he had left the employer's premises. Although he recognized that we had expressly disclaimed an "outer perimeter" theory in *Levine*, 66 *N. J.* at 420, he felt that "the risk of being struck by a falling tree on the public highway was one . . . which the general traveling public faced and was not 'reasonably incident' to the employment." We disagree. To the extent that petitioner was walking to the parking lot provided for employees after making a short detour to perform a work-related errand, we think that this case presents an even stronger basis for compensation than did *Levine*. In this setting, petitioner's brief departure from the geographical boundaries of the employer's premises was "reasonably incidental" to his duties as a waiter; moreover, the accident occurred on his way back to the lot, thus dispelling any doubts concerning his ultimate destination. In the context of these unusual circumstances, a rigid application of the going and coming rule seems unduly mechanistic and harsh.

Although the judge below made supplemental findings as to the extent of disability, he did not fix the exact amount of compensation due to petitioner. The judgment of the Appellate Division is reversed and the case remanded to the Division of Workers' Compensation for further proceedings in accordance with this opinion.

SCHREIBER, J., dissenting. The Court has twisted the statutory compensability criteria under the Workers' Compensation Act to include an accident which occurred after the end of the working day, on a public street, when the employee was en route from his privately rented room to meet a co-worker who was to drive him to Asbury Park. Reliance is not placed on the special errand concept, the Court properly finding that the employer had not given instructions for

the trip, but simply on the assertion that the employee's trip to his rented room "was related to, if not compelled by, his employment . . ." 74 *N. J.* 155, 162.

This factual conclusion is said to be justified on the basis that the employee, Lawrence E. Watson, went to his room to obtain his soiled work clothes which needed to be cleaned and the "accident occurred before he departed from work by his usual means of transportation." *Id.* However, the Judge of Workers' Compensation concluded that Watson's journey to his living quarters was for personal reasons, a conclusion which the Appellate Division found was supported by sufficient credible evidence in the record. Further, the judge noted, as indeed he had to under the undisputed evidence, that the accident occurred *after* the employee had arrived home and then left to meet his friend.

The record contains abundant support for these findings. Watson had rented and occupied a room several blocks from the Nassau Inn in Princeton, where he worked as a waiter. He arranged his time off to coincide with that of a co-worker, Robert Miller, who each Thursday afternoon would drive Watson to his Asbury Park home. It was Watson's custom to take a travelling bag of soiled clothing to Asbury Park for laundering.

The two would rendezvous at Miller's automobile located in the parking lot across the street from the Nassau Inn. If Watson completed his workday first, generally he would walk to his room, fetch the laundry and return to the lot. If Miller was through first, he would drive Watson to his room where the laundry would be picked up and they would continue on to Asbury Park.

On Thursday, November 1, 1973, Watson finished before Miller, went to his room, obtained the soiled clothing and, while walking on the public sidewalk toward the parking lot, was injured by a falling tree. This accident came to pass *after* Watson had reached his home and while he was walking toward the parking lot across the street from his employer's place of business.

The Court has this day redefined the going and coming rule to exclude from compensability those accidents which occur during "routine daily trips to or from an employee's fixed place of business at specified hours at the beginning or end of the day." *Briggs v. American Biltrite,* 74 *N. J.* 185, 190. Watson's trip to his rented room clearly falls within that limited definition. The accident occurred after Watson had already arrived at his Princeton home and left. He had completed his "coming" from work. Since recovery is not permissible under the Court's new going and coming rule, it follows *a fortiori* that the injury cannot be compensable under these circumstances.

The majority's reliance on *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970) and *Levine v. Haddon Hall Hotel,* 66 *N. J.* 415 (1975) is misplaced. In *Hammond* the accident occurred between the employer's premises and a parking lot it furnished. Although the petitioner in that case did not travel the entire distance between the two areas because a co-employee was to drive from the lot and pick her up, the petitioner was on the same route used by other employees to walk to the parking lot when the accident occurred.

In *Levine,* the employee, after disembarking from a public bus, was struck by a truck while crossing a street en route to the employer's premises. The Court reasoned that, since the employer's parking facilities for employees were one or two blocks away and accidents happening between the two locations would be compensable, the accident which occurred within that geographical span was also compensable.

Neither *Hammond* nor *Levine* is supportive here. A crucial fact in those cases was the place of the occurrence, the situs being between the employer's premises and the parking area[1] which it furnished. Neither decision countenances accidents happening after arrival at the employee's home. Al-

---

[1]*But see Levine,* 66 *N. J.* at 420, 423 (dissenting opinion).

though not formally eliminating the going and coming rule, the Court here has added a new dimension — coverage for accidents which materialize *after* arriving home.

The accident occurred outside the employee's regular work hours, not on the employer's premises, and not during a period when he was under the control or direction of the employer. The attenuated relationship with the employment, namely that the employee was proceeding to take soiled clothes for cleaning to Asbury Park, is far too remote to conclude that costs of an accident during this personal trip should be imposed on the employer, Nassau Inn, and its patrons. *See Wyatt v. Metropolitan Maintenance Co.*, 74 *N. J.* 167, 172 (1977) (dissenting opinion).

I would affirm.

Justice CLIFFORD joins in this opinion.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and HANDLER—5.

*For affirmance*—Justices CLIFFORD and SCHREIBER—2.