SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## Henry Keim v. Above All Termite & Pest Control (A-30-22) (087603)

**Argued September 11, 2023 -- Decided November 21, 2023**

**FASCIALE, J., writing for a unanimous Court.**

The Court considers whether an employee's car accident occurred "in the course of employment" under N.J.S.A. 34:15-36's "authorized vehicle rule" and is therefore compensable under the Workers' Compensation Act (the Act).

Above All Termite & Pest Control (Above All) employed Henry Keim as a salaried pest-control technician and provided him with an employer authorized vehicle for work use. In compliance with company policy, Keim drove that vehicle in the morning from his own residence to various worksites and returned home in the same vehicle at the end of the workday.

Above All's policy limited the quantity of supplies technicians could keep in their authorized vehicles overnight. When technicians needed to replenish supplies, Above All authorized them to drive their vehicles to Above All's shop instead of driving directly to a worksite, to retrieve whatever they required, and then to go from the shop to the scheduled sites. On the morning of the accident, Keim clocked in, received his schedule, and concluded that his vehicle lacked sufficient supplies. On his way to the shop for supplies, Keim sustained injuries in a car accident.

The Judge of Compensation dismissed Keim's claim petition with prejudice, concluding that Keim was merely commuting to work when he sustained injuries. The Appellate Division applied the "authorized vehicle rule" and reversed the dismissal order. The Court granted certification. 253 N.J. 289 (2023).

**HELD:** Keim was "in the course of employment" under the "authorized vehicle rule" at the time of the accident because Above All authorized a vehicle for him to operate and his operation of that identified vehicle was for business expressly authorized by Above All.

1. Prior to 1979, broad statutory language defined compensable accidents as those arising out of and in the course of the employment. To distinguish compensable from noncompensable incidents, the courts developed the going and coming rule,

1

which ordinarily precluded an award of compensation benefits for injuries sustained during routine travel to and from an employee's regular place of work. In 1979, the Legislature amended the Act by defining and limiting the scope of employment. Notably, the Legislature amended N.J.S.A. 34:15-36 to define when "employment" under the Act begins and ends each day. (pp. 9-11)

2. As amended, N.J.S.A. 34:15-36 sets forth four distinct rules that govern when an employee is considered to be "in the course of employment" under the Act: the "premises rule"; the "special mission rule"; the "paid travel time rule; and the "authorized vehicle rule." That last rule provides that "the employment of . . . any employee who utilizes an employer authorized vehicle shall commence and terminate with the . . . authorized operation of a vehicle on business authorized by the employer." N.J.S.A. 34:15-36 (emphases added). The "authorized vehicle rule" does not apply every time an employee is driving a vehicle authorized by an employer. And the rule does not categorically apply when an employee is merely commuting to work in either an authorized personal or work vehicle. (pp. 11-16)

3. In this case, Keim argues that his injuries are compensable under the "authorized vehicle rule." The word "authorized" separates actions that are unrelated to work and thus, not compensable, from actions that are related to work. Based on the plain language of the "authorized vehicle rule" in N.J.S.A. 34:15-36, an employee is "in the course of employment" when (1) the employer authorizes a vehicle for operation by the employee, and (2) the employee's operation of that identified vehicle is for business expressly authorized by the employer. (pp. 16-18)

4. Under that rule, Keim was in the course of employment when he sustained injuries. Above All provided an authorized vehicle for operation by Keim. Keim's operation of that vehicle to the shop on the morning of the car accident was solely for business expressly identified and authorized by Above All, namely, to replenish supplies. The permissive approach to replenishment taken here -- whereby employees determined for themselves whether and when to visit the shop on an as needed basis -- does not change the analysis under the language of the authorized vehicle rule. At the time of the accident, Keim was not "merely" commuting to work; rather, he was obtaining needed supplies at a non-worksite location as he was authorized to do by his employer. Because Keim's injuries are compensable under the "authorized vehicle rule," the Court does not consider whether any of the other rules established in N.J.S.A. 34:15-36 are applicable here. (pp. 18-20)

**AFFIRMED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-30 September Term 2022
087603

Henry Keim,

Petitioner-Respondent,

v.

Above All Termite
& Pest Control,

Respondent-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 11, 2023 | November 21, 2023 |

Anne Hammill Pasqua argued the cause for appellant
(Capehart & Scatchard, attorneys; Anne Hammill Pasqua,
of counsel and on the briefs).

April M. Gilmore argued the cause for respondent (The
Epstein Law Firm, attorneys; April M. Gilmore, of
counsel and on the brief).

Richard B. Rubenstein argued the cause for amicus curiae
New Jersey Advisory Council on Safety and Health
(Rubenstein, Berliner & Shinrod, attorneys; Richard B.
Rubenstein, of counsel and on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

1

In this workers' compensation case, we determine whether an employee's car accident occurred "in the course of employment" and is therefore compensable under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -147.

In N.J.S.A. 34:15-36, the Legislature expressly defined when employment commences and terminates in different settings or scenarios. It created what are generally known as the "premises rule"; the "special mission rule"; the "paid travel time rule"; and the "authorized vehicle rule." In this case, petitioner Henry Keim argues that he is entitled to compensation for his injuries under the statute's "authorized vehicle rule." To assess his eligibility under N.J.S.A. 34:15-36, we examine the statutory meaning of operating an "employer authorized vehicle" to conduct "business authorized by the employer."

We hold that an employee is "in the course of employment" under the "authorized vehicle rule" prescribed by N.J.S.A. 34:15-36 when (1) the employer authorizes a vehicle for operation by the employee, and (2) the employee's operation of that identified vehicle is for business expressly authorized by the employer. Here, consistent with the "authorized vehicle rule," the employer, Above All Termite & Pest Control (Above All), provided a vehicle and authorized the employee, Keim, to operate that vehicle to

2

replenish supplies at a particular location as needed.  Keim was thus "in the course of employment" when he drove his authorized vehicle to obtain the supplies and was injured in a serious car accident.  As a result, he is entitled to benefits under the Act.

We therefore affirm the Appellate Division's judgment reinstating Keim's workers' compensation claim petition and remand for further proceedings.

I.

A.

Above All employed Keim as a salaried pest-control technician.  He performed work-related services at residential and commercial properties.  To enable Keim to fulfill his responsibilities as a technician, as it did for all of its technicians, Above All provided him with an employer authorized vehicle for work use.  In compliance with company policy, Keim drove that vehicle in the morning from his own residence to various worksites and then, at the end of the workday, returned home in the same vehicle.  Above All allowed Keim, like its other technicians, to keep his authorized vehicle at home overnight, which benefitted Above All's business because technicians saved time in the mornings by driving directly to job–site locations.

3

Above All implemented rules governing technician procedures. Michael Zummo, Above All's owner, posted daily work assignments on company iPads that provided Keim and the other technicians with their schedules for the day. Those employees were expected to clock in each morning using their iPads and at that time learn where they would perform pest-control services. Once Keim arrived at his assigned worksite, he utilized Above All's supplies from his vehicle, such as chemicals, rodent traps, and insect dust.

Above All's policy limited the quantity of supplies technicians could keep in their authorized vehicles overnight. Instead, the pesticides, chemicals, and other supplies required to perform the pest-control services were stored at Above All's shop (the shop). Zummo was not only concerned that the weather could compromise the pesticides and chemicals, but he also wanted to safeguard Above All's supplies from theft. Therefore, whether technicians had enough supplies for the workday depended on what was left over in their vehicles from the night before and the supplies needed for the new day.

Importantly, Above All had implemented a procedure that enabled technicians to collect supplies when those supplies needed replenishment. In those settings, Zummo authorized technicians to drive their vehicles directly to the shop instead of driving directly to a worksite, retrieve whatever they required, and then go directly to the scheduled worksites for the day. Keim

4

testified he went to the shop to replenish his supplies about "two to three days a week."

Zummo did not expressly "assign" or "direct" technicians to replenish supplies every morning. Rather, pursuant to company policy, he empowered his technicians to obtain more supplies by utilizing their authorized vehicles as needed. Zummo testified, "I never know when [the employees are] going to run out or run[] low, so I leave it up to them to come back to the office [i.e., the shop] to replenish when needed." Keim testified that he often discussed the decision to replenish supplies with Zummo.

On the morning of the accident, Keim clocked in on his iPad, received his work schedule, and concluded that his vehicle lacked sufficient supplies for him to perform his scheduled pest-control services. Keim therefore drove toward the shop to obtain supplies. He planned to follow after that the schedule Zummo had posted.

On his way to the shop, Keim sustained substantial injuries in a serious car accident. Keim struck his head on the interior of his work vehicle and lost consciousness, leaving him with balance issues that worsened over time. Approximately two months after the accident, Keim discovered that he suffered from bilateral subdural hematomas. He then underwent surgery, was hospitalized for several days, and received follow-up medical care.

5

B.

After Above All's insurance carrier denied Keim's initial workers' compensation employee claim petition, Above All moved to dismiss the claim petition in its entirety, contending that Keim's injuries did not arise out of and in the course of his employment. Meanwhile, Keim filed a motion for temporary and/or medical benefits, seeking authorization for post-surgical medical treatment and temporary disability benefits. Above All disputed compensability and opposed that motion.

At the evidentiary hearing, the Judge of Compensation heard testimony from Keim and Zummo and concluded that Keim was merely commuting to work when he sustained injuries in the car accident. As to N.J.S.A. 34:15-36's "authorized vehicle rule," he noted that although Keim "had to go and pick up" his supplies, that was "irrelevant since he was on his way to his place of employment." He therefore dismissed the claim petition with prejudice.

The Appellate Division disagreed with the Judge of Compensation's conclusion that Keim was simply commuting to work. Applying N.J.S.A. 34:15-36, the court determined that Keim sustained injuries while in the course of his employment because he operated an "employer authorized vehicle" and was on business "expressly authorized and directed by his employer." The

6

appellate court reversed the dismissal order, reinstated the petition, and remanded for further proceedings.

We granted Above All's petition for certification. 253 N.J. 289 (2023). We also granted a motion by the New Jersey Advisory Council on Safety and Health (NJACOSH) to appear as amicus curiae.

## II.

Above All argues that the Act creates a bright-line "coming and going" rule, now known as the "premises rule," whereby injuries sustained while commuting to or from work are noncompensable. Above All contends that the Appellate Division's judgment abrogated the "premises rule," and that Keim's injuries are not compensable under the Act because he was on routine travel to replenish work supplies at the shop while commuting to his place of employment.

Keim argues his injuries are compensable under the Act. Relying on N.J.S.A. 34:15-36, he maintains that he was in the course of employment because he operated an "employer authorized vehicle" on business that was "expressly authorized and directed by his employer." Keim urges us to affirm the judgment of the appellate court.

NJACOSH supports Keim's interpretation of N.J.S.A. 34:15-36 and agrees that he sustained injuries that arose out of and in the course of his

employment. Amicus further argues that Keim's injuries are compensable under the "special mission rule" of N.J.S.A. 34:15-36.

## III.

"Courts generally give 'substantial deference' to administrative determinations." Lapsley v. Township of Sparta, 249 N.J. 427, 434 (2022) (quoting Earl v. Johnson & Johnson, 158 N.J. 155, 161 (1999)). Ordinarily, in the workers' compensation context, our review is limited to "'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge their credibility." Ibid. (quoting Earl, 158 N.J. at 161).

But this appeal requires us to determine whether the facts bring Keim's accident within the scope of the "authorized vehicle rule," and determinations of "the legal consequences that flow from established facts are not entitled to any special deference." Utley v. Bd. of Rev., Dep't of Labor, 194 N.J. 534, 551 (2008) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Rather, we review the interpretation of a statute de novo. Lapsley, 249 N.J. at 434-35.

When interpreting a statute, "[t]he Legislature's intent is the paramount goal." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v.

8

Bracigliano, 177 N.J. 250, 280 (2003)).  Courts "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole."  Ibid. (citations omitted).  Here, we interpret the Act, which "is humane social legislation designed to place the cost of work-connected injury on the employer who may readily provide for it as an operating expense."  Lapsley, 249 N.J. at 435.  "[P]rovisions of the Act have always been construed and applied in light of [its] broad remedial objective."  Ibid. (second alteration in original) (quoting Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 95 (1988)).

IV.

A.

Prior to 1979, there existed "broad statutory language defining compensable accidents as those arising out of and in the course of the employment."  Hersh v. County of Morris, 217 N.J. 236, 243 (2014) (quoting Watson v. Nassau Inn, 74 N.J. 155, 158 (1977)).  "To facilitate the task of distinguishing compensable from noncompensable incidents, the courts developed the going and coming rule, which ordinarily precluded an award of compensation benefits for 'injuries sustained during routine travel to and from an employee's regular place of work.'"  Livingstone, 111 N.J. at 96 (quoting Watson, 74 N.J. at 158).  The rule, which was created in Gullo v. American

9

Lead Pencil Co., 119 N.J.L. 484, 486 (E. & A. 1938), and affirmed in

Hammond v. Great Atlantic & Pacific Tea Co., 56 N.J. 7, 11 (1970), separated

"work risks from ordinary risks unrelated to employment" and "was premised

on the assumption that the normal journey to and from work is of no particular

benefit to the employer and exposes the worker to no unusual risks." Hersh,

217 N.J. at 243.

The "going and coming rule" evolved throughout the twentieth century.

For many years, New Jersey courts grappled with the contours of the rule,

particularly as it applied to the start or end of a commute and to lunch breaks,

with decisions collectively broadening the rule over time in keeping with the

remedial nature of the Act. See, e.g., DiNardo v. Newark Bd. of Educ., 118

N.J. Super. 536, 539-40 (App. Div. 1972) (creating a common law exception to

the "going and coming rule" by allowing a schoolteacher to recover workers'

compensation benefits for injuries sustained while walking to a bus stop after

work because the teacher "might reasonably be" there and the use of the public

transportation was a benefit to the employer); Hornyak v. Great Atl. & Pac.

Tea Co., 63 N.J. 99, 106-08 (1973) (creating a common law exception to the

"going and coming rule" for lunchtime travel off the work premises); Levine v.

Haddon Hall Hotel, 66 N.J. 415, 419-20 (1975) (relying on Hammond and

DiNardo in holding that the injuries sustained by an employee crossing the

street outside the employee's place of work at the beginning of the workday were compensable); Wyatt v. Metro. Maint. Co., 74 N.J. 167, 171-72 (1977) (reaffirming the Hornyak rule and holding that a hospital employee's injuries were compensable after he was assaulted on his lunch break). Over time, courts thus carved out many "exceptions" to the "going and coming rule," which allowed for "countless awards" of benefits under the Act. Hersh, 217 N.J. at 243; Jumpp v. City of Ventnor, 177 N.J. 470, 478-80 (2003).

B.

In 1979, the Legislature amended the Act in response to "the far-reaching effect of the 'going and coming rule' . . . by defining and limiting the scope of employment," generally reflecting a "more restrictive" approach to compensation. Hersh, 217 N.J. at 244 (quoting Joint Statement of the S. & A. Labor, Indust. & Pros. Comm. to S. 802 and A. 840 at 2 (Nov. 13, 1979)). Notably, the Legislature amended N.J.S.A. 34:15-36 to define when "employment" under the Act begins and ends each day:

> Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the

11

employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer.

[N.J.S.A. 34:15-36.]

N.J.S.A. 34:15-36 sets forth four different rules governing when an employee is considered to be "in the course of employment" under the Act: the "premises rule," the "special mission rule," the "paid travel time rule," and the "authorized vehicle rule." The latter three rules have sometimes been called "exceptions" to the "premises rule." We conclude, however, that those so-called "exceptions" are better understood as distinct rules that define commencement and termination of employment in different scenarios.

## 1.

The first scenario is governed by the "premises rule," which addresses an employee reporting to work <u>at an employer's place of employment</u>. Under those circumstances,

[e]mployment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of

12

employment, excluding areas not under the control of the employer . . . .

[N.J.S.A. 34:15-36.]

The rule establishes that, although "an injury to an employee that happens going to or coming from work" is generally not compensable, such injury "arises out of and in the course of employment," and is therefore compensable, if it "takes place on the employer's premises." Kristiansen v. Morgan, 153 N.J. 298, 316 (1998), modified in other part, 158 N.J. 681 (1999). We have explained that the phrase "excluding areas not under the control of the employer" was "intended to make clear that the premises rule can entail more than the four walls of an office or plant." Ibid. The critical questions under the "premises rule" are "(1) where was the situs of the accident, and (2) did the employer have control of the property on which the accident occurred[?]" Id. at 316-17 (citation omitted).

2.

The second scenario is governed by the "special mission rule," which expressly refers to employees who are tasked with performing duties away from the "employer's place of employment":

> [W]hen the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct

13

> performance of duties assigned or directed by the employer . . . .

> [N.J.S.A. 34:15-36 (emphases added).]

The "special mission rule" allows for compensation when employees are "required to be away from the conventional place of employment . . . if actually engaged in the direct performance of employment duties." Zelasko v. Refrigerated Food Express, 128 N.J. 329, 336 (1992). Critically, under the "special mission rule," the "duties" must be "assigned or directed by the employer." N.J.S.A. 34:15-36.

### 3.

The third scenario is governed by the "paid travel time rule," which provides that

> the employment of employee paid travel time by an employer for time spent traveling to and from a job site . . . shall commence and terminate with the time spent traveling to and from a job site . . . .

> [N.J.S.A. 34:15-36.]

Under the "paid travel time rule," "[w]hen the employee is paid an identifiable amount as compensation for time spent in a going or coming trip, the trip is within the course of employment." 1 Larson, Workers' Compensation Law § 14.06 (Desk Edition). "Thus, when an off-premises employee, having terminated one job, moves to another job at the request of

14

the same employer, and is paid during that travel, the employee is covered by this rule." Ibid. Moreover, the "paid travel time rule" comes up in the context of travel to a remote site. Ibid. In a situation like that, an employee is paid for travel to work to be performed at a remote place to induce the employee to work far from home. Ibid.; see Zelasko, 128 N.J. at 336 (noting that the "paid travel time rule" affords "portal-to-portal coverage for employees . . . paid for travel time to and from a distant job site"). Thus, under the "paid travel time rule," when the employee's injury is sustained while going to and from a job site separate from the place of employment and the employee is paid for the time spent in traveling, the employee is covered by the Act. See Zelasko, 128 N.J. at 338.

4.

The fourth scenario is governed by the "authorized vehicle rule," which provides that

> the employment of . . . any employee who utilizes an <u>employer authorized vehicle</u> shall commence and terminate with the . . . <u>authorized operation</u> of a vehicle <u>on business authorized by the employer</u>.
>
> [N.J.S.A. 34:15-36 (emphases added).]

The "authorized vehicle rule" allows workers' compensation benefits when an employee "utilizes an employer authorized vehicle" with the employer's authorization for "business authorized by the employer." See ibid.

15

In other words, such an employee is considered to be "in the course of employment" in that setting. However, the "authorized vehicle rule" does not apply every time an employee is driving a vehicle authorized by an employer. And importantly, the "authorized vehicle rule" does not categorically apply when an employee is merely commuting to work in either an authorized personal or work vehicle.

V.

In this case, Keim argues that his injuries are compensable under the "authorized vehicle rule" quoted above. "The word 'authorized' is used in the statute to separate actions that are unauthorized and unrelated to work [and thus, not compensable], from actions" that are related to work. Zelasko, 128 N.J. at 348 (Handler, J., dissenting). Generally speaking, "authorized" is defined as "to invest [] with legal authority"; to "empower"; or "to establish by or as if by authority." Webster's New Collegiate Dictionary 75 (8th ed. 1980). In turn, "authority" is defined as "power to influence or command thought, opinion, or behavior." Ibid. A synonym of "authority" is "influence." Ibid. The plain understanding of "authority" connotes exerting power or control over someone or providing someone with permission to do something.

The word "authorized" appears in the pertinent part of N.J.S.A. 34:15-36 three times. First, it appears in the phrase "any employee who utilizes an

16

employer <u>authorized</u> vehicle."  N.J.S.A. 34:15-36 (emphasis added).  In this

context, "authorized" modifies the word "vehicle" -- "employer" modifies the

word "authorized."  Importantly, nothing in the statute's text indicates that the

vehicle must be "owned" by an employer, although here the vehicle in

question was indeed owned by Above All.

The second time "authorized" appears in the text is in the phrase, "the

<u>authorized</u> operation of a vehicle."  N.J.S.A. 34:15-36 (emphasis added).

Under that phrase, the employee needs to drive or operate the vehicle and be

authorized to do so by the employer.  Here, Above All provided an authorized

vehicle for operation by Keim.

The third time "authorized" appears in N.J.S.A. 34:15-36 is in the

phrase, "on business <u>authorized</u> by the employer."  N.J.S.A. 34:15-36

(emphasis added).  "Business" has various general meanings:  "an immediate

task or objective"; "a . . . commercial or mercantile activity engaged in as a

means of livelihood"; or "a serious activity requiring time and effort."

Webster's New Collegiate Dictionary 148 (8th ed. 1980).  In the employment

context, "business" is ordinarily understood as conduct that serves to benefit

an employer, enterprise, or company.  See Black's Law Dictionary 247 (11th

ed. 2019).  Thus, based on a plain reading and understanding of the phrase

"business authorized," when an employee, with permission from an employer,

17

is engaged in a work-related activity or an activity that requires time and effort to benefit the employer, the employee is conducting "business authorized" by the employer. It is commonly understood that "business authorized" includes travel "when the travel [within a job] is a substantial part of the service performed." 2 Larson's Workers' Compensation Law § 14.07 (2023).

Based on the plain language of the "authorized vehicle rule" in N.J.S.A. 34:15-36, we hold that an employee is "in the course of employment" when (1) the employer authorizes a vehicle for operation by the employee, and (2) the employee's operation of that identified vehicle is for business expressly authorized by the employer.

And under that rule, Keim was in the course of employment when he sustained injuries in the car accident. Above All provided an authorized vehicle for operation by Keim. Keim's operation of that vehicle to the shop on the morning of the car accident was solely for business expressly identified and authorized by Above All, namely, to replenish supplies. The entire arrangement, both as to the vehicle's location and the need to replenish supplies, reflected a business decision expressly designed by the employer to further the employer's interests in safeguarding and maintaining the quality of its supplies and in minimizing travel time for employees, thus facilitating a robust appointment schedule.

18

We are not persuaded that the passive, permissive approach to replenishment taken by the employer here -- whereby employees determined for themselves whether and when to visit the shop on an as needed basis -- changes the analysis. The "authorized vehicle rule" merely requires an employer's authorization. This stands in contrast to the more pointed requirements of the "special mission rule," which applies when the employee is directly performing "duties assigned or directed by the employer." N.J.S.A. 34:15-36 (emphases added). The clear difference in language indicates that "on business authorized" does not mean exactly "duties assigned or directed by the employer." See DiProspero, 183 N.J. at 492 ("We cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment . . . .'" (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952))); see also State v. Rangel, 213 N.J. 500, 514 (2013) ("Words make a difference. '[W]hen the Legislature includes limiting language in one part of a statute, but leaves it out of another,' a court should assume that it intended a different meaning." (alteration in original) (quoting Ryan v. Renny, 203 N.J. 37, 58 (2010))). In short, an employer can authorize an employee to do something, here, replenish supplies as needed, without expressly assigning or directing that employee to perform those specific duties.

19

That is what happened here. At the time of the accident, Keim was not "merely" commuting to work; rather, he was obtaining needed supplies at a non-worksite location as he was authorized to do by his employer. The fact that the replenishment occurred before his first worksite job rather than between two jobs does not alter the nature of Keim's trip to the shop. Keim was in the course of employment at the time of the accident, and his injuries are therefore compensable. Because we conclude Keim's injuries are compensable under the "authorized vehicle rule," we need not consider whether any of the other rules established in N.J.S.A. 34:15-36 are applicable here.

## VI.

We affirm the judgment of the Appellate Division, reinstate the claim petition, and remand for further proceedings.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.