61 N.J. Super. 1 (1960)
160 A.2d 173
PETER YUROCHKO, PETITIONER-RESPONDENT,
v.
BECKLEY PERFORATING CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1959.
Decided March 15, 1960.
*3 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. Isidor Kalisch argued the cause for respondent-appellant.
Mr. Mortimer Wald argued the cause for petitioner-respondent.
*4 The opinion of the court was delivered by FOLEY, J.A.D.
This is a workmen's compensation case. Respondent appeals from a judgment of the County Court affirming an award in the Workmen's Compensation Division. The issue is whether the petitioner suffered an accident arising out of and in the course of his employment. R.S. 34:15-7.
We have examined the entire record and the views expressed in the tribunals below and, in reaching our independent determination, have given due regard to the opportunity of the hearer of the evidence to have judged the credibility of the witnesses in accordance with the mandate of Russo v. United States Trucking Corp., 26 N.J. 430 (1958).
Respondent was in the business of processing materials such as masonite and metal. This entailed the use of machinery for cutting, perforating and allied purposes. Petitioner had been in the employ of the respondent for approximately one year and ten months prior to the happening of the accident which forms the basis of this suit.
On January 17, 1958, shortly after 7:30 A.M., petitioner, during working hours, interrupted his assigned duties to ask a co-worker, McAllister, to perforate a piece of scrap masonite for him, admittedly intending to take it home for his personal use. McAllister, the operator of the press which was used in the perforating process, was then engaged in applying grease to the rollers at the back of his machine. In response to petitioner's request McAllister laconically told petitioner to do it himself and continued with his work. Petitioner went to the opposite side of the machine and inserted the piece of scrap in the front rollers. He then returned to the back of the machine to receive it as it came through the back rollers. Evidently the piece of material was not long enough to come in contact with these rollers and the petitioner put his hand in the machine in an effort to pull the material through. In doing so his hand became caught in the device and was severely injured.
*5 Petitioner and two other employees testified that it was a common practice in the plant for employees to appropriate scrap materials to their own use with the knowledge of respondent's supervisory personnel. It may be inferred from the nature of the scrap that management realized that if this material was to be effectively utilized by the employees for their personal use, it would be necessary for them to use respondent's machinery because of the unlikelihood that the employees themselves would possess the necessary equipment. In any event there was testimony by the above-mentioned witnesses that the machinery was utilized by the employees for this purpose in full view of representatives of management and without objection. It appears also that while petitioner had not previously operated this particular machine (except during his trial period as a press operator concerning which we shall presently comment) he had on several occasions in the presence of his foreman cut or perforated scrap metal for his own purposes on a shearing machine, and had at times, when this machine was idle, cut metal for the employer's purposes. In overall view the picture presented by the evidence is one of indiscriminate use by the employees, whether machine operators or not, of the respondent's machinery to adapt scrap to the employees' personal projects with the acquiescence of respondent's supervisory personnel. This picture is highlighted by the fact that although, as noted, petitioner and the two other employees who testified in his behalf unequivocally stated that this practice was carried on under the eyes of respondent's foreman, none of the latter class of employees was called by respondent to refute the charge.
As the case is presented to us the thesis of the respondent is that the accident resulted from a purely personal act, in itself a violation and disobedience of an order to refrain from the use of the machine, and constituted an abandonment or deviation from the ambit and sphere of petitioner's employment. To support this position stress is laid on the fact that when petitioner entered respondent's *6 service he was put to work as a "press operator" on the same machine which brought him to his injury or one similar to it, but that two weeks later he was given a job as a "material handler," his duties then consisting in bringing materials to various machines and in removing scrap or sludge which fell to the floor. Petitioner stated that the reason for the change was that he did not want to "work shift work." Respondent claims that it came about because petitioner did not qualify as a press operator and that petitioner knew this to be the fact. Accepting for present purposes respondent's version, we are not impressed by the argument that petitioner's use of the machine in these circumstances constituted "disobedience" of an "order." The defense of disobedience presupposes the existence of specific instructions designed primarily, if not exclusively, for the safety of the employees, of which the petitioner had actual notice. Also even where such disobedience occurs recovery is not barred if the deviation does not amount to an unreasonable breach of the employer-employee relationship. Green v. De Furia, 19 N.J. 290, 298 (1955).
Plainly in the case sub judice management's assignment of petitioner to other duties, of itself, did not spell out a specific order that petitioner should not use the machine, since obviously the work reassignment may have been inspired by any number of considerations apart from management's concern for the safety of petitioner. For instance, it is at least equally inferable that the transfer to other work was motivated by the employer's conclusion that petitioner's work productivity on the press operation was substandard, and thus unprofitable to the employer, or that he was less valuable to the employer as a press operator than others who were available for this work.
We therefore find that the transfer of petitioner from press operation to other duties almost two years prior to the date of the accident did not establish or even tend to establish disobedience of a binding order.
*7 There is no question that the act of petitioner in using respondent's machinery to fashion for his own purposes materials which were the property of the employer formed no part of his regularly assigned duties. Nor can we with reason conclude that the employer obtained any benefit therefrom so as to make the risk an incident of employment as in Green v. De Furia, supra, or that the petitioner was serving his personal comfort or convenience as in Buerkle v. United Parcel Service, 26 N.J. Super. 404 (App. Div. 1953); Taylor v. 110 S. Penna. Ave. Corp., 117 N.J.L. 346 (Sup. Ct. 1936); Terlecki v. Strauss, 85 N.J.L. 454 (Sup. Ct. 1914).
It may be conceded that in the sense of literal compliance with stated duties, petitioner here did deviate therefrom. But this fact does not necessarily deprive him of the benefits of the Workmen's Compensation Act if the injuries are work connected. As has been frequently said by our courts, the act is remedial in nature and is therefore liberally construed to give effect to its beneficent purposes. The sweeping generality of the statutory language and its judicial interpretation suggest the conscientious endeavor to maintain a liberal but just line between those accidental injuries which may be said to have had some work connection and those which are unrelated to the employment. In drawing this line the courts do not rely merely upon legalistic formula but rather have sought to apply fairly and justly the comprehensive legislative compensation plan to the particular facts presented. Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 587 (1959). Justice Jacobs in Tocci noted that shortly after the passage of the act it was said that an accident arises out of the employment if it results from a risk reasonably incident thereto, and that it is within the course of employment if it occurs while the employee is doing what a man so employed may reasonably do within the period of time of his employment, and at a place where he may reasonably be while thus employed. Bryant v. Fissell, 84 N.J.L. 72, 77 (Sup. Ct. *8 1913). Necessarily this implies that where there has been a deviation from the strict line of duty the character of the deviation, the reason therefor, its extent, and whether it was a practice acquiesced in by the employer, all have a strong bearing on the fundamental question of whether the risk was reasonably incidental to the employment. In each case the approach must be guided by an understanding that the employee is not an automaton; that even when he is highly efficient he will to some extent deviate from the uninterrupted performance of his work; and that if the deviation be considered minor in the light of the particular time, place and circumstance, it is realistically viewed by both the employer and the employee as a normal incident of the employment relation. Secor v. Penn Service Garage, 19 N.J. 315, 324 (1955).
As we equate these concepts to the facts in the case under review, respondent's acquiescence in the common practice of the employees' use of its materials and machinery assumes significant importance. Respondent, chargeable with knowledge of a dangerous practice, owed to its employees the obligation of exercising its authority to order the discontinuance of the use of machinery by persons unskilled and untrained in its operation. It is beyond argument that, aside from willfully inflicted injuries or those resulting from voluntary intoxication, fault of the employee plays no part in the operation of the Workmen's Compensation law. Under the act the dangers arising from working conditions become the responsibility of the employer without reference to whether the employee has contributed to his own injury. Where, as here, an undue recurring risk creeps into the work pattern with the knowledge and consent of the employer, the latter should be answerable even if he does not derive a benefit therefrom since the dominance of his position in the employer-employee relationship enables him to order at any time the discontinuance of the practice giving rise to the risk. In our judgment the failure of the employer to act accordingly in this case was tantamount to an invitation *9 to its employees to engage in the dangerous practice which occasioned petitioner's injury. Thus the risk became an incident of the employment and hence work connected in the liberal sense in which the Workmen's Compensation Act must be construed.
Affirm.