ANDREA P. CORREIA, PETITIONER-APPELLANT, v. MAPLE-
WOOD EQUIPMENT COMPANY, RESPONDENT-APPEL-
LEE.

Superior Court of New Jersey
Appellate Division

Argued June 5, 1978—Decided June 20, 1978.

Before Judges ALLCORN, MORGAN and HORN.

*Mr. Robert W. Delventhal* argued the cause for appellant (*Messrs. Crummy, Del Deo, Dolan & Purcell,* attorneys).

*Mr. Joseph M. Speidel* argued the cause for respondent (*Messrs. Gorrin & Ironson,* attorneys).

PER CURIAM. The Division of Workers' Compensation found that decedent's accidental injury and death were unrelated to his employment and, accordingly, dismissed the dependency claim petition filed by petitioner decedent's widow, on her own behalf and for the two minor children of the marriage. Petitioner appeals challenging as inadequately supported the judge's conclusions that at the time of the accident, decedent was in the course of a deviation from the scope of his employment. Rather, she contends, that whether or not a deviation had occurred, it had terminated at the time when the accident occurred.

The factual information relevant to the principal issue raised is sparse because of decedent's lack of recollection

as to what occurred and his subsequent death. The facts which are reflected in the record are relatively free from dispute.

Decedent Anthony A. Correia was treasurer for respondent at its office in Fairview, New Jersey. He had the use of a·company car to drive back and forth to work as well as to use for business purposes during the work day. In addition, he owned a personal car, a 1970 Lincoln (the accident vehicle), which he used approximately one day a week for work. Respondent provided decedent with the use of a gasoline credit card for both vehicles. The daily trip from his home in Union, New Jersey, to the Fairview office was usually made via the Garden State Parkway or the New Jersey Turnpike. Generally decedent would leave his home for work at about 9:30 a.m. and return from work between 7:30 and 8:30 p.m. It had not been unusual, however, for him to remain at work five or six times a month until 9:00 or 10:00 p.m. On one occasion years before he had worked all night.

On the morning of January 18, 1974 decedent drove to work in the company station wagon. That day he was to pick up the Lincoln from a garage where it had been taken for a tune-up. During the day he worked on a fare increase for respondent bus company which had a deadline and some tax returns. During the afternoon he advised his wife that he would be working late on the fare increase and to have dinner without him. Decedent was last seen at the office by the company personnel manager who left at about 5:30 p.m. At 10:30 p.m. petitioner's husband telephoned her, asked for the telephone number of a coworker, told her he would be working "quite late" and that she was not to wait up for him. At 11:00 p.m. and again at 11:30 p.m. petitioner attempted to reach her husband at his office by calling his private number, but received no answer. Nothing else is known of decedent's activities until the time of the accident.

According to the police report, at 3:50 a.m. on January 19, 1974 decedent, in his 1970 Lincoln, hit a pole while proceeding on the ramp leading to the Parkway south from Route 17 in Paramus, New Jersey. It was snowing and the ramp was icy. From the late afternoon of January 18, 1974 until 10 a.m. January 19, 1974 there was a sleet and freezing rain storm. However, all of the state highways in the area were salted, traffic movement and speed were normal, and there were no reported tie-ups. Decedent was unable to remember anything about the accident or where he was before he died as a result of his injuries on February 11, 1974.

The judge found that were it not for the unexplained circumstances the case would fall into the payment for transportation exception to the going-and-coming rule and decedent's death would be compensable. However, he further found that the accident occurred some eight miles north of any normal route home for decedent, his whereabouts after 10:30 p.m. were not known, and there was no factual testimony as to why decedent was at the site of the accident. Therefore, he held that because of the unexplained deviation "the petitioner has not, by a preponderance of probabilities, borne the burden of proof in proving a work-connected accident."

In making the required determination as to whether the disposition of the dependency claim petition by the judge of compensation is reasonably supportable on the basis of the whole record before him, *Kaplowitz v. K & R Appliances, Inc.*, 108 *N. J. Super.* 54 (App. Div. 1969), certif. den. 55 *N. J.* 452 (1970), we are hampered by the absence of specific findings on factual issues relevant to the conclusion reached. Hence, although the judge properly concluded that the exception to the going-and-coming rule based upon employer-borne expenses of travel to and from the place of business was applicable, and that an accident occurring during such travel would under ordinary circumstances be held compensable, he failed entirely to find

whether decedent had been pursuing a deviation from the scope of his employment when injured and whether, if that is so, the fatal accident occurred before or after that deviation had terminated. Also missing is a finding as to whether decedent was on his way home when the accident occurred. See *Rainear v. Rainear,* 63 *N. J.* 276, 284 (1973); *Hebrank v. Parsons,* 88 *N. J. Super.* 406, 420 (App. Div. 1965); *Green v. Bell Cleaners,* 65 *N. J. Super,* 311, 317–18 (App. Div.), aff'd 35 *N. J.* 596 (1961), for a sampling of cases disclosing the materiality of these factual issues not specifically disposed of by the Division.

In the interest of expedition, however, and because the essential facts are relatively free from dispute and determinations of credibility not involved, we undertake to decide this matter without a remand for these missing findings. We can only view the findings which were made as tacitly evincing the judge's view that decedent had deviated from the scope of his employment after he had last spoken to his wife on the telephone and left his place of employment for a place or places unknown, located at least eight miles north of his place of employment. He also must be deemed to have concluded that this deviation occupied a substantial period of time, somewhere in the area of five hours. None of these findings, however, shed light on whether this deviation, which we assume to be the fact, had terminated when decedent sought entry to the southbound lane of the Garden State Parkway, particularly since his place of residence was to the south of where the accident occurred.

If not entirely dispositive of this appeal, we nonetheless view *Rainear v. Rainear, supra,* as unmistakably pointing the way to a proper resolution of the issues here projected. In *Rainear,* as in this pending matter, the accident which occurred during travel to and from work fell within the exception to the going-and-coming rule based upon employer-borne travel expenses, and decedent in *Rainear,* as decedent in this case, died as a result of an accident which occurred during such travel. Also, in both cases, decedent had entered

upon a substantial deviation from the scope of his employment immediately before the accident occurred. Indeed, in *Rainear,* the deviation occupied some ten hours of time, whereas in this case the deviation took somewhat more than half that time. In terms of sheer geography, the deviation here extended at least eight miles from the place of employment, whereas in *Rainear,* although not clear from the opinion, the deviation was in terms of time alone. Respondent seizes upon this latter element in an attempt to distinguish *Rainear* from the present case. It argues that even were it to be assumed that decedent was travelling home when the accident occurred, he had not at the time reached a point between work and home but was still some eight miles north of his place of employment. Hence, according to respondent, decedent could not be found to be "on his way home along a permissible route," *Rainear v. Rainear, supra* 63 *N. J.* at 280, and the deviation cannot, therefore, be held to have terminated.

The general rule, abstracted from *Rainear,* is that where accidents during travel to and from work are deemed to have arisen out of the employment and in the course thereof, pursuant to the applicable exception to the going-and-coming rule, deviations for personal purposes unrelated to the work will not defeat compensability where the deviation does not embody, as it ordinarily does not, an "intent to abandon the work-connected travel home and when the deviation is terminated and the travel home is resumed the coverage will resume." *Id.* at 284. Conspicuously absent from this formulation is an inflexible requirement that the injury or death-producing accident occur geographically at some point between work and home and on a "permissible route." *Id.* We deem such a requirement to be an overly formalistic approach to an essentially policy-oriented problem, whether an accident is sufficiently work-connected to justify regarding the resulting injury as compensable. Clearly, the solution to each such problem must be approached on an *ad hoc* basis instead of being

fashioned by resort to inflexible rules. If the deviation is sufficiently substantial in terms of time and geography, such as a personally motivated trip from New Jersey to California, the mere fact that an accident occurs on the long trip home will not ordinarily result in compensability. On the other hand, to take an equally exaggerated example, a brief personal sojourn outside normal routes to and from work will not defeat compensability once the employee resumes his way home even where the injury occurs on other than the normal routes of travel. If the deviation does not amount to an abandonment of the work-connected travel home, coverage is resumed when the deviation is terminated and travel home is resumed.

▮ Although the judge of compensation failed to find whether decedent had resumed his travel home when entering the southbound lanes of the Garden State Parkway, the record is bare of evidence that he was going anywhere else. There is no question but that the Garden State Parkway was a means used by decedent to go home. His home was south of the point of entry to the southbound lanes of the Parkway. We are convinced from this state of the record that no other conclusion is warranted but that he had resumed his travel home at the time the accident occurred, even though he was at the time some eight miles north of the portion of the Parkway which he would normally use for that purpose. The deviation which we assume took place was not so great in terms of time or geography as to warrant a conclusion that he had abandoned the work-connected trip home.

We, therefore, are constrained to conclude that the judge of compensation was in error in denying compensability in these circumstances.

Reversed and remanded for entry of judgment in favor of petitioner.