796 A.2d 945 (2002)
351 N.J. Super. 44
Robert JUMPP, Jr., Petitioner-Appellant,
v.
CITY OF VENTNOR, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 15, 2002.
Decided May 17, 2002.
Press & Long, attorneys for appellant (Carmine J. Taglialatella, of counsel and on the brief with Richard L. Press).
*946 Wallace, Legome & Pietras, attorneys for respondent (James G. Pietras, on the brief).
Before Judges HAVEY, BRAITHWAITE and COBURN.
The opinion of the court was delivered by HAVEY, P.J.A.D.
Petitioner Robert Jumpp appeals from an order entered by the Division of Workers' Compensation denying him benefits. Petitioner, who worked on the road for respondent City of Ventnor as a pumping station operator, deviated from his assigned rounds by picking up his personal mail at the post office. While leaving the post office, he injured himself. In denying benefits, the judge of compensation concluded that petitioner was not "engaged in the direct performance of duties assigned or directed by the employer...." N.J.S.A. 34:15-36. We affirm.
Petitioner's duties entailed visiting sewer pumping stations, water wells and towers on a twice-daily basis. His typical shift was from 7 a.m. until 3 p.m. Ordinarily, he performed paperwork while at the public works office until 8:30 a.m. He then commenced his duties checking the six sites, utilizing a City vehicle. At each of the sites, petitioner checked the electrical or chlorine systems, alarms and other components to make sure they were functioning properly.
Petitioner usually completed these tasks by mid-morning. Often, he stopped to have a cup of coffee before returning to the public works office. He repeated the routine during the afternoon hours. Petitioner has no "standard" lunch or break time, and is permitted by his supervisor to stop for coffee or to use the bathroom facilities at local restaurants.
On May 5, 1998, petitioner followed his usual routine. At approximately 8:30 a.m. he left the office and proceeded to the Canal Pumping Station. He then went directly to the Lafayette Avenue pumping station, and then to the Number 10 tower. After completing inspection of the tower, petitioner proceeded northerly on Ventnor Avenue toward the Little Rock Avenue sewer pumping station. However, on the way he stopped at the post office situate at the intersection of Ventnor and Sacramento Avenues to check his post office box for personal mail. While exiting the post office he fell and injured his right hip.
Plaintiff testified that he normally stopped at the post office on a daily basis with the knowledge and approval of his supervisor, Thomas Klein. Klein testified and confirmed that fact, explaining:
It's not a written policy, it'swe have a union contract which allows the men a 15-minute break in the morning and again in the afternoon.
The nature of our business is that we have people coming and going continually. If they stop to pick up something at WaWa or one of the local stores in Ventnor; pack of cigarettes, soda, Tasty-Cake, make a stop at the post office, you know, some other brief stop within the confines of the City we have no objection to that.
Citing Ward v. Davidowitz, 191 N.J.Super. 518, 468 A.2d 250 (App.Div.1983), the judge of compensation concluded that petitioner's injury did not occur while in the course of his employment duties. Acknowledging that petitioner's stop at the post office was a minor "deviation," the judge observed:
Permitting employees to run minor personal errands is not unlike recreational or social activities which are now addressed in N.J.S.A. 34:15-7. Allowing them to run personal errands produces *947 no benefit to the employer beyond an improvement in employee morale. The City of Ventnor permitted, but did not require, that employees perform minor personal errands during work. Clearly, if the petitioner had stopped for his mail after work, it would not be a compensable situation and I find that based upon the [1979] amendments to the statute as interpreted in Ward, that it is not compensable....
N.J.S.A. 34:15-36 (§ 36) provides in pertinent part:
Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer.
Section 36 was part of a package of 1979 amendments to the Workers' Compensation Act, L. 1979, c. 238. By adding a definition of "employment" in § 36, the Legislature codified the common-law "premises rule" which confines "employment" to "when an employee arrives at the employer's place of employment ... and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer...." N.J.S.A. 34:15-36. Often, the issue raised in cases involving application of this "premises rule" is whether the place of the employee's injury was under the control of, or controllable by, the employer. See Brower v. ICT Group, 164 N.J. 367, 371-74, 753 A.2d 1045 (2000) (finding that an injury was compensable which occurred after an employee punched out at the end of his working day and fell descending a stairwell in a multi-tenant office building); Novis v. Rosenbluth Travel, 138 N.J. 92, 96, 649 A.2d 69 (1994) (holding that employee did not suffer compensable injury when she fell on sidewalk leading from parking lot to office building because the employer had no control over the parking lot); Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 104-06, 543 A.2d 45 (1988) (injury in parking lot compensable because the employer had directed the employees to park at the outer-most edge of the shopping mall parking lot, and thus the employer "controlled" the designated area). The "premises rule" is not implicated in this case.
At the same time, the Legislature recognized that many employees work on the road or at sites other than the employer's principal place of business. Thus, § 36 provides that "when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer...." This language has been interpreted as preserving the "special missions" rule, which allows compensation when the employee is required to be away from the conventional place of employment for business purposes, and travel was an indispensable part of the performance of the employee's job duties. Zelasko v. Refrigerated Food Express, 128 N.J. 329, 336-37, 608 A.2d 231 (1992). In Nemchick v. Thatcher Glass Mfg. Co., 203 N.J.Super. 137, 143, 495 A.2d 1372 (App.Div.1985), for example, we held that the employee was entitled to compensation where, after his regular eight-hour shift, he was sent on an all-night emergency assignment, and after completing his task and twenty-seven *948 sleepless hours, he was injured in an automobile accident when he blacked out on his way home. See also Ehrgott v. Jones, 208 N.J.Super. 393, 397-99, 506 A.2d 40 (App. Div.1986) (holding that an accident was compensable where it occurred during an employer-paid trip to an out-of-state professional meeting).
Petitioner argues that the 1979 amendment was intended only to abrogate the pre-amendment court decisions which had eroded the traditional "going and coming rule," a rule which precluded coverage for injuries occurring during routine travel to and from work. See Zelasko, supra, 128 N.J. at 335, 608 A.2d 231; Livingstone, supra, 111 N.J. at 96-98, 543 A.2d 45. Petitioner contends that the so-called common-law "incidental deviation rule" is implicated here, and that this rule was not nullified by the 1979 amendments.
The "incidental deviation rule" has been articulated by Dean Larson as follows:
An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial.
[1 Larson, Workmen's Compensation Law § 19.00 (1990).]
Larson continues:
As the later discussion of personal comfort cases will show, the courts now generally recognize that human beings do not run on tracks like trolley cars, and therefore uphold awards in situations like the following: getting cigarettes during a trip to or from work in the employer's conveyance; running across the street in the course of a delivery trip to buy a little food; driving one's daughter to school, dropping one's wife off at church, leaving a message with one's sister about working late, picking up mail for vacationing friends, crossing the street during a beer break to retrieve one's lunch, stopping at one's home to get a raincoat and leave some meat; crossing the road during a delivery trip to have a glass of beer at 2:00 in the afternoon....
[Id. at § 19.63 (footnotes omitted).][1]
New Jersey courts, at least until 1979, consistently followed the rule articulated by Larson. See Correia v. Maplewood Equip. Co., 160 N.J.Super. 276, 281-82, 389 A.2d 972 (App.Div.) (granting compensation for injuries sustained in home-bound automobile accident even though employee had taken an unexplained deviation), certif. granted, 78 N.J. 341, 395 A.2d 209 (1978); Jones v. Continental Elec. Co., Inc., 75 N.J.Super. 76, 79-81, 182 A.2d 168 (App. Div.) (granting compensation where employee was killed while crossing the street to purchase food 575 feet from nearest plant door), certif. denied, 38 N.J. 312, 184 A.2d 423 (1962); DeBello v. Reep & Blackford, 2 N.J. Misc. 456, 456, 101 N.J.L. 218, 127 A. 522 (1925) (granting compensation where employee, driving a company vehicle, deviated from an errand to pick up a friend), aff'd, 2 N.J. Misc. 456, 101 N.J.L. 218, 127 A. 522 (E. & A.1925). In Crotty v. Driver Harris Co., 49 N.J.Super. 60, 71, 139 A.2d 126 (App.Div.), certif. denied, 27 N.J. 75, 141 A.2d 318 (1958), a case involving a deviation from assigned tasks at the work site, we observed that:

*949 Employees who, within the time and place of their employment, engage in acts which minister to personal comfort or needs do not thereby leave the course of their employment unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred.

[Id. at 70, 139 A.2d 126.]
There are no post-1979 cases addressing the question whether the incidental deviation rule remains viable. However, it is clear that by requiring that the employee be engaged in the "direct performance" of work-related duties, the Legislature intended to "sharply curtail" compensation for off-premises accidents. Mangigian v. Franz Warner Assocs., Inc., 205 N.J.Super. 422, 426, 501 A.2d 179 (App.Div.1985) (quoting Hon. Alfred J. Napier, Impact of the Reform Act of 1980, 96 New Jersey Lawyer 17, 18 (1981)). In his article, Judge Napier, the Chief Judge of Compensation, added that the "direct performance" language in the 1979 amendment was:
designed to remove from compensability certain cases heretofore held compensable where special hazards existed en route to the employer's premises, off-premise injuries sustained during lunch hour and injuries sustained while traveling at the employer's direction but deviating from a direct line of travel to pursue a purely personal activity.

[Napier, supra, 96 New Jersey Lawyer at 18 (emphasis added).]
Indeed, the decisions of our court since the 1979 amendment have, except for the special mission cases, where the unusual circumstances of the case justified compensation, consistently denied benefits when the employee was not engaged in the "direct performance" of work-related duties. For example, in Mangigian, supra, 205 N.J.Super. at 427, 501 A.2d 179, we observed that the "direct performance" language "means exactly what it says." There, an employee who was on a field trip with her supervisor had completed her work-related tasks and returned to her motel room. She thereafter went out for a late-night snack and was injured on her way home from the restaurant. Id. at 424, 501 A.2d 179. We held that petitioner was not entitled to compensation because she "had fully completed her work assignment and was safely ensconced in the motel before she decided to embark upon a purely personal errand." Id. at 428, 501 A.2d 179.
Similarly, in Walsh v. Ultimate Corp., 231 N.J.Super. 383, 390, 555 A.2d 731 (App.Div.), certif. denied, 117 N.J. 92, 563 A.2d 849 (1989), we concluded that petitioner's injury was not compensable where he was assigned to work in Australia and sustained injuries in an automobile accident during a pleasure trip to a resort. Further, in Ward, supra, 191 N.J.Super. at 523-24, 468 A.2d 250, we held that, in view of the clear language of the 1979 amendment, an employee was not in the direct performance of her work-related duties when she was injured in a car accident occurring off-premises during a lunch break. See also Ohio Cas. Group v. Aetna Cas. & Surety Co., 213 N.J.Super. 283, 289-90, 517 A.2d 166 (App.Div.1986) (holding that the employee's injury was not compensable where, off duty, he drove a friend home in a company car after a late night gathering of employees).
What is gleaned from these cases is that we have consistently refused to depart from the clear legislative mandate sharply curtailing compensability for off-premises accidents. To do so would do violence to the plain language of the statute and undercut the cost-saving objectives of the Legislature. See Livingstone, supra, 111 N.J. at 101-02, 543 A.2d 45 (overriding *950 purpose of the 1979 amendments was to provide meaningful cost containment for New Jersey employers).
We need not determine whether or not there may be some cases that still fit within the "incidental deviation" rule, despite enactment of § 36. It may be, for example, that an off-premises employee, who briefly ministers to personal needs by availing himself or herself to the bathroom facilities at a local restaurant, should not be deprived of the right to benefits simply because of this inconsequential, but necessary deviation. However, we hold that an employee who deviates from the temporal and spacial limits of his or her assigned employment tasks for the sole purpose of engaging in a personal errand or activity is simply not "engaged in the direct performance of duties assigned or directed by the employer." N.J.S.A. 34:15-36 (emphasis added). The employee is satisfying a personal need, the completion of which is neither incidental to his or her employment tasks nor beneficial to the employer.
The fact that petitioner in this case worked on the road, rather than from a specified site, is not significant. In our view, his deviation was no different from the office worker who takes an afternoon break and crosses the street to pick up his personal mail at the local post office. Although such a deviation may have been inconsequential, it would not be compensable. Cf. Ward, supra, 191 N.J.Super. at 523-24, 468 A.2d 250 (employee was not in the direct performance of her work duties when she was injured off-premises during her lunch break).
Petitioner cites Yurochko v. Beckley Perforating Co., 61 N.J.Super. 1, 160 A.2d 173 (App.Div.1960), in arguing that his supervisor's acquiescence in his practice of stopping at the post office has legal significance in deciding the issue before us. However, aside from the fact that Yurochko was decided nineteen years before the 1979 amendments to the Act, in Yurochko the issue was whether the injury to the employee arose out of his employment, not whether it occurred in the course of employment. See N.J.S.A. 34:15-7 (providing compensation for accidents "arising out of and in the course of employment").[2] In Yurochko, supra, the petitioner injured himself at his workplace while operating a press to perforate a piece of scrap masonite, intending to take it home for personal use. 61 N.J.Super. at 4, 160 A.2d 173. In concluding that the accident arose out of petitioner's employment, the court found significant the employer's "acquiescence in the common practice of the employee's use of its materials and machineries." Id. at 8, 160 A.2d 173. The court further held:
Where, as here, an undue recurring risk creeps into the work pattern with the knowledge and consent of the employer, the latter should be answerable even if he does not derive a benefit therefrom since the dominance of his position in the employer-employee relationship enables him to order at any time the discontinuance of the practice giving rise to the risk.

[Ibid.]
In this case, petitioner was not exposed to "an undue recurring risk," nor did he injure himself using a dangerous instrumentality for personal reasons on the job site. The discrete question before us is whether his injury "occurred" when he was *951 "engaged in the direct performance of duties assigned or directed by the employer." § 36. Petitioner's supervisor's acquiescence in his post office visits does not alter the fact that petitioner was carrying out a personal activity, and not his work-related duties.
Affirmed.
NOTES
[1] Had the cases cited by Larson been decided in the context of New Jersey's present definition of "employment," we question whether benefits would have been afforded. We doubt, for example, that under present New Jersey law, an off-premises employee who is injured in a tavern during his 2 p.m. "beer" break would be entitled to benefits simply because the break was "insubstantial."
[2] In Coleman v. Cycle Transformer Corp., 105 N.J. 285, 288, 520 A.2d 1341 (1986), the Court suggested that it is convenient to separate the "arising out of and in the course of employment" phrase into two portions. The "arising out of" portion refers to "causal origin," and "course of employment" portion refers to the "time, place, and circumstances of the accident...."