828 A.2d 905

ROBERT JUMPP JR., PETITIONER–APPELLANT, v. CITY
OF VENTNOR, RESPONDENT–RESPONDENT.

Argued March 18, 2003—Decided August 13, 2003.

*Carmine J. Taglialatella* argued the cause for appellant (*Press & Long*, attorneys).

*James G. Pietras* argued the cause for respondent (*Pietras Saracino*, attorneys).

*Craig H. Livingston* submitted a brief on behalf of *amici curiae*, New Jersey State Council of Machinists, International Association of Machinists and Aerospace Workers, AFL–CIO, New Jersey Advisory Council on Safety and Health and New Jersey American Federation of Labor Congress of International Organizations (*Ball Livingston*, attorneys; *Mr. Livingston* and *Alan R. Levy*, on the brief).

The opinion of the Court was delivered by

PORITZ, C.J.

In this case, the Court must determine whether a city worker, whose daily duties required him to visit various sites within the city's boundaries, is eligible for workers' compensation benefits when he was accidentally injured during the workday but while on a personal errand. We hold that generally there must be a finding that the off-premises employee is performing his or her work responsibilities at the time of the injury in order for the injury to be compensable. We also hold that minor deviations from the employee's prescribed responsibilities survive the 1979 amendments to the workers' compensation statute. On the undisputed facts in this record, however, we conclude that petitioner cannot obtain benefits under the statute. We therefore affirm the rulings of the courts below.

## I

Petitioner Robert Jumpp, Jr., was employed by the City of Ventnor (City) as a pumping station operator. His job was to

monitor twice daily the electrical, chlorination and other systems at each of the six water wells, towers and sewerage pumping stations owned and operated by his employer. Because those facilities were dispersed throughout the City, Jumpp used a City-owned vehicle when traveling to each worksite to perform his duties.

On a typical day, petitioner arrived at the municipal public works office at 7:00 a.m. and by 8:30 a.m., after completing some paperwork and answering telephones, proceeded to his first location. Ordinarily, he completed his initial inspection of all six sites by mid-morning and then repeated his rounds during the afternoon. As he was continually in transit, petitioner had no set time for lunch or a coffee break, and therefore, without objection from his direct supervisor Thomas Klein, he was permitted to make brief stops at local establishments for food and beverages or to use the restroom. Petitioner also stopped each day to retrieve his personal mail from a local post office located on the route to one of his job sites, a habit that Klein knew about and allowed.

The day of his accident, May 5, 1998, Jumpp followed his usual routine. On the way to his fourth scheduled inspection, he parked his municipal vehicle around the corner from the post office and left it running while he went in to check his personal mail. As he was returning to the vehicle, however, petitioner slipped and fell on a nearby driveway, suffering a fractured pelvis and severe leg injuries that required hospitalization and the insertion of a pin into his left fibula.

During a visit to petitioner in the hospital, his supervisor mentioned that there should not be any problem with workers' compensation even though petitioner was checking his personal mail at the time of the accident, and that petitioner would be eligible for benefits. Petitioner thereafter filed a claim with the New Jersey Division of Workers' Compensation (Division) alleging that the injuries he suffered arose out of and in the course of his employment. The City subsequently filed an answer denying those allegations and disputing the compensability of petitioner's

injuries. As a consequence, the trial was bifurcated and proceeded solely on the issue of compensability.

At trial, Jumpp testified that he frequented the post office on a daily basis with the knowledge and permission of his supervisor. Klein agreed, stating that it was an unwritten policy to allow employees "who are coming and going continually" to make brief stops at local establishments in the City to attend to personal business. Despite that testimony, on April 9, 2001, Judge Terry Dailey issued an order and written opinion dismissing petitioner's claim. Although Judge Dailey found that Jumpp was "authorized" to make the post office stop, and that the stop was only a "minor deviation from his responsibilities," the judge concluded that petitioner's injuries were not compensable because he was engaged in a personal errand and not the "direct performance of duties assigned or required by [his] employer." *N.J.S.A.* 34:15–36.

The Appellate Division affirmed Judge Dailey's ruling and rejected petitioner's contention that he is eligible for workers' compensation because his brief visit to the post office constituted but an " 'incidental deviation' " from his duties. *Jumpp v. City of Ventnor*, 351 *N.J.Super.* 44, 49, 796 *A.*2d 945, 948 (2001) (citation omitted). The court explained "that by requiring [an] employee [to] be engaged in the 'direct performance' of work-related duties, [*N.J.S.A.* 34:15–36,] the Legislature intended to 'sharply curtail' compensation for off-premises accidents." *Id.* at 50, 796 *A.*2d at 949 (citing *Mangigian v. Franz Warner Assocs., Inc.*, 205 *N.J.Super.* 422, 426, 501 *A.*2d 179, 181 (App.Div.1985) (quoting Hon. Alfred J. Napier, *Impact of the Reform Act of 1980*, 96 *New Jersey Lawyer* 17, 18 (1981))). In light of that objective, and based on consistent precedent of the Appellate Division, the court held that "an employee who deviates from the temporal and spacial limits of his ... employment tasks for the sole purpose of engaging in a personal errand or activity is simply not 'engaged in the *direct* performance of duties' " as required by the statute. *Id.* at 52, 796 *A.*2d at 950 (emphasis in original). Because Jumpp sustained

injuries while attending to a personal errand "neither incidental to his ... employment, ... nor beneficial to the employer," the court concluded that he was not entitled to compensation. *Id.* at 52–53, 796 *A.*2d at 950.

We granted certification, 175 *N.J.* 78, 812 *A.*2d 1110 (2002), and permitted the participation of *amici,* New Jersey State Council of Machinists, International Association of Machinists and Aerospace Workers, AFL–CIO, New Jersey Advisory Council on Safety and Health, and New Jersey American Federation of Labor–Congress of International Organizations. We now affirm.

## II

The Workers' Compensation Act (hereinafter Act) requires employers to compensate employees for accidental injuries "arising out of and in the course of employment." *N.J.S.A.* 34:15–7. The Act describes employment as

> commenc[ing] when an employee arrives at the employer's place of employment to report for work and terminat[ing] when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer. Travel by a policeman, fireman, or a member of a first aid or rescue squad, in responding to and returning from an emergency, shall be deemed to be in the course of employment.
>
> [*N.J.S.A.* 34:15–36.]

That definition of employment was part of a package of amendments passed in 1979 and signed into law in 1980. Those amendments were designed to "provid[e] genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that [in the late 1970s were] among the highest in the nation." N.J. Senate Labor, Industry and Professions Committee, *Joint Statement to Senate Committee*

*Substitute for N.J. Senate No. 802 and Assembly Committee Substitute for N.J. Assembly No. 840* (Nov. 13, 1979) (hereinafter *Joint Statement*); *see also Sarzillo v. Turner Constr. Co.,* 101 *N.J.* 114, 119, 501 *A.*2d 135, 138 (1985) (identifying cost containment as one of the primary objectives of the 1979 amendments). As the Appellate Division observed below, *Jumpp, supra,* 351 *N.J.Super.* at 50–51, 796 *A.*2d at 948–49, the Legislature sought to reduce costs by, among other things, "sharply curtail[ing compensability for] off-premises accidents." Hon. Alfred J. Napier, *Impact of the Reform Act of 1980,* 96 *N.J. Lawyer* 17, 18 (Summer 1981). Specifically, that

> language ... removed from compensability certain cases heretofore held compensable where special hazard existed *en route* to the employer's premises, off-premises injuries sustained during lunch hour and injuries sustained while traveling at the employer's direction but deviating from a direct line of travel to pursue a purely personal activity.
>
> [*Ibid.*]

The legislative history of the Act in respect of compensability for off-premises accidents is instructive. Prior to the 1979 amendments, the Act did not define employment but "simply provided for compensation when employees were injured or killed in accidents 'arising out of and in the course of employment.'" *Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 95, 543 *A.*2d 45, 49 (1988) (quoting *L.* 1911, *c.* 95, § 7, now codified at *N.J.S.A.* 34:15–7). As a result, "it devolved on the courts to develop principles capable of distinguishing between" compensable and noncompensable injuries. *Id.* at 95, 543 *A.*2d at 49. In *Livingstone, supra,* Justice Stein discussed the development of bases for decision making during that period as follows:

> [I]t was decided that an accident arises in the course of employment "if it occurs while the employe[e] is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." Further, ... an accident arises out of employment "when it results from risks reasonably incidental to employment," meaning risks that either "belong to" or are "connected with what a workman has to do in fulfilling his contract of service."
>
> [*Id.* at 95–96, 543 *A.*2d at 49 (citations omitted).]

Those principles led to the adoption of the "going and coming" or "premises" rule, "which ordinarily precluded benefits for 'injuries sustained during routine travel to and from an employee's regular place of work.'" *Id.* at 96, 543 *A.*2d at 50 (quoting *Watson v. Nassau Inn,* 74 *N.J.* 155, 158, 376 *A.*2d 1215, 1217 (1977)). Under that rule, an employee who had not yet arrived on the employer's premises, or who had departed the premises at the conclusion of a scheduled work period, was not deemed to be "in the course of employment" for the purposes of *N.J.S.A.* 34:15–7. *Ibid.* (citation omitted).

Over time, however, rigid application of the going and coming rule "produced many harsh results" inconsistent with the Act's remedial purpose, leading our "courts to carve out numerous exceptions to it." *Hammond v. The Great Atl. & Pac. Tea Co.,* 56 *N.J.* 7, 11, 264 *A.*2d 204, 206 (1970); *accord Livingstone, supra,* 111 *N.J.* at 96, 543 *A.*2d at 49; *O'Brien v. First Camden Nat'l Bank & Trust Co.,* 37 *N.J.* 158, 163, 179 *A.*2d 740, 742–43 (1962). Thus, we brought within the scope of the Act off-premises injuries sustained by employees who were "directly involved in completing employer related tasks," *Livingstone, supra,* 111 *N.J.* at 97, 543 *A.*2d at 50, or engaged in activities approved by their employers and reasonably "incidental to the employment," *Strzelecki v. Johns–Manville Prod. Corp.,* 65 *N.J.* 314, 320, 322 *A.*2d 168, 171 (1974). *See, e.g., Watson, supra,* 74 *N.J.* at 161–63, 376 *A.*2d at 1218–19 (holding that employee injured on errand to retrieve required uniform was entitled to compensation); *Levine v. Haddon Hall Hotel,* 66 *N.J.* 415, 420, 332 *A.*2d 193, 195 (1975) (holding that employee, whose employer diverged from normal practice of providing parking facilities for employees, was entitled to compensation for injuries suffered while crossing street to workplace).

Also during that period, the Court recognized that an on-premises employee might not be "actually working" at the time he or she was injured but that in certain circumstances compensation nonetheless should be available. *Secor v. Penn Serv. Garage,* 19 *N.J.* 315, 321, 117 *A.*2d 12, 15 (1955). Under the minor deviation

rule, an employee does not become ineligible for workers' compensation simply because he or she

> stopped work to have a smoke, or to get some fresh air, or to use the telephone, or to satisfy other human needs incidental to his being at his place of employment[. I]t is clear that injuries which occur during such minor deviations are generally sufficiently related to the employment to call for compensation. Similarly employees may stop work to satisfy their interest in a passing parade or in a strange object or their curiosity generally[. S]o long as the deviation is minor it should be disregarded.
>
> [*Ibid.* (citations omitted).]

As broadly formulated, the minor deviation rule in effect considered personal habits or errands, such as smoking or making a phone call, to be in the "course of employment" even though, unlike the indispensable human functions of eating and using the lavatory, employees need not engage in such activities to perform their work duties adequately. A body of case law developed in which injuries suffered by employees engaged in personal activities were found to be compensable when they occurred both on and off the employer's premises, even though the injury was unconnected or only tenuously related to the employee's job duties. See, for example, concerning on-premises injuries, *Tocci v. Tessler & Weiss, Inc.,* 28 *N.J.* 582, 587–88, 147 *A.*2d 783, 785–86 (1959) (allowing compensation for employee injured while playing softball on employer's premises during lunch hour); *Secor, supra,* 19 *N.J.* at 323, 117 *A.*2d at 16 (holding that severe burns suffered by gas station attendant who lit cigarette that ignited his gasoline-soaked clothes occurred during course of employment and were compensable); and, concerning off-premises injuries, *Hornyak v. Great Atl. & Pac. Tea Co.,* 63 *N.J.* 99, 105–108, 305 *A.*2d 65, 68–70 (1973) (holding that going and coming rule did not bar compensation for injuries sustained during voluntary, off-premises lunch breaks); *Ricciardi v. Damar Prod. Co.,* 45 *N.J.* 54, 61–62, 211 *A.*2d 347, 350–51 (1965) (holding that going and coming rule did not preclude compensation for injuries sustained by plaintiff while traveling home from employer-sponsored picnic held away from employer's premises).

As noted above, in 1979, the Legislature for the first time defined on-premises and off-premises employment. On-premises employment (as its terminology directly implies), begins when the employee gets to the place where he or she works (to the premises), and ends when the employee leaves that place; off-premises employment, however, relates to the doing of the work "assigned or directed by the employer." *N.J.S.A.* 34:15–36. The employee who is "required by the employer to be away from the employer's place of employment [is] in the course of employment," *ibid.*, when he or she is actually carrying out the work assignment and is therefore eligible for benefits if injured at the point. Consonant with that language, and aware of the Legislature's desire to limit the availability of benefits for off-premises injuries, *Napier, supra,* 96 *New Jersey Lawyer* at 18, our courts have since interpreted the statute to bar compensation for injuries sustained in certain activities that prior to the 1979 amendments were deemed within the scope of employment.

Thus, in *Ward v. Davidowitz,* 191 *N.J.Super.* 518, 468 *A.*2d 250 (App.Div.1983), an employee was injured in an automobile accident that occurred while she was returning to work from her lunch break. *Id.* at 520, 468 *A.*2d at 251. Although acknowledging that prior decisions of this Court had considered midday lunch breaks part of the workday, and thus an exception to the going and coming rule, *id.* at 522–23, 468 *A.*2d at 252–53 (contrasting *Hornyak, supra,* and *Wyatt v. Metro. Maint. Co.,* 74 *N.J.* 167, 376 *A.*2d 1222 (1977), with *N.J.S.A.* 34:15–36), the Appellate Division nonetheless held that, after the passage of *N.J.S.A.* 34:15–36, off-premises "lunch break accidents" are no longer compensable "as a matter of law." *Id.* at 524, 468 *A.*2d at 253. Examining the language and history of Section 36, the court concluded that it was that "specific type of claim which the Legislature intended to eliminate or curtail by enacting a specific definition of employment." *Id.* at 523, 468 *A.*2d at 252. In the court's view, the statutory definition of employment

is keyed to the elimination of an employer's responsibility for accidents occurring in areas not under his control *unless* the employee is required by the employer to be

away from the employer's place of employment. In that event the determining element of compensability rests upon the direct performance of duties assigned or directed by the employer rather than the place of employment.

[*Id.* at 523–24, 468 *A.*2d at 252–53 (emphasis in original).]

Similarly, in *Mangigian, supra,* the Appellate Division upheld the denial of compensation to an employee who was struck by an automobile when she came back at 10:00 p.m. to her motel room after purchasing supper for herself and her supervisor. 205 *N.J.Super.* at 423–24, 501 *A.*2d at 179–80. At the time, the employee was responsible for investigating and testing security systems in various retail stores in Rahway, New Jersey. *Id.* at 424, 501 *A.*2d at 180. When performing their duties, she and her supervisor resided in a motel to which they usually returned at about 8:00 p.m. each evening. *Ibid.* Upholding the denial of compensation, the court observed that the employee had "fully completed her work assignment and was safely ensconced in the motel before she decided to embark upon a purely personal errand." *Id.* at 428, 501 *A.*2d at 182. The court concluded that she was not in " 'the direct performance . . . of duties assigned [to her] or directed by [her] employer' " for the purposes of *N.J.S.A.* 34:15–36. *Id.* at 427, 501 *A.*2d at 181–82. *See also Ohio Cas. Group v. Aetna Cas. & Sur. Co.,* 213 *N.J.Super.* 283, 289–90, 517 *A.*2d 166, 169–70 (App.Div.1986) (affirming denial of workers' compensation on similar facts).

Several years later, the Appellate Division interpreted language in *N.J.S.A.* 34:15–36 addressing the course of employment for employees "operat[ing] . . . a vehicle on business authorized by the employer." In *Chisholm–Cohen v. County of Ocean,* 231 *N.J.Super.* 348, 555 *A.*2d 713 (App.Div.1989), the court considered whether workers' compensation benefits were available to an employee injured in a car accident while driving a company vehicle on a personal errand. In that case, a technician with Ocean County's Department of Emergency Services was provided with a county vehicle that she used to attend required training sessions several nights a week. *Id.* at 349–50, 555 *A.*2d at 714. On the night of her accident, rather than proceed directly to the scheduled ses-

sion, she first drove home to have dinner with her family and to change her clothes. *Id.* at 350, 555 *A.*2d at 714. It was on the trip home that the accident occurred. *Ibid.* The Appellate Division held that the petitioner was not entitled to compensation because, "although operating a company car with the authorization of her employer," she was not engaged in " 'business authorized by the employer' " as required by the statute. *Id.* at 352, 555 *A.*2d at 715–16. The court noted that petitioner "was not . . . on her way home to perform any duties assigned to her by her employer," *ibid.*, and concluded that the 1979 amendments, which were "designed 'to impose upon off-site accidents a more restrictive standard of compensability,' " barred her recovery. *Id.* at 351, 555 *A.*2d at 715 (quoting *Ehrgott v. Jones,* 208 *N.J.Super.* 393, 397, 506 *A.*2d 40, 42 (App.Div.1986)).

### III

We hold that when an employee is assigned to work at locations away from "the employer's place of employment," eligibility for workers' compensation benefits generally should be based on a finding that the employee is performing his or her prescribed job duties at the time of the injury. Case law subsequent to the 1979 amendments has recognized the legislative intent to focus on the performance of the work, thereby limiting the reach of the workers' compensation statute. In furtherance of that "clear legislative mandate sharply curtailing compensability for off-premises accidents," *Jumpp, supra,* 351 *N.J.Super.* at 52, 796 *A.*2d at 949, the Appellate Division held in each of the cases we have reviewed that Section 36 barred recovery because the activities were personal in nature and concerned neither "duties assigned nor directed," nor "business authorized," by the employer. *See Mangigian, supra,* 205 *N.J.Super.* at 427–28, 501 *A.*2d at 181–82; *Ward, supra,* 191 *N.J.Super.* at 522–24, 468 *A.*2d at 252–53; *see also Chisholm–Cohen, supra,* 231 *N.J.Super.* at 352, 555 *A.*2d at 715–16. As recognized by the panel here, *Jumpp, supra,* 351 *N.J.Super.* at 51, 796 *A.*2d at 949, the rationale of those cases

represents a significant departure from our pre 1979 jurisprudence wherein the minor deviation rule was applied broadly in off-premises cases as a means of enlarging the scope of the statute. *See, e.g., Wyatt, supra,* 74 *N.J.* at 171–72, 376 *A.2d* at 1223–24; *Hornyak, supra,* 63 *N.J.* at 105–108, 305 *A.2d* at 68–70; *Hammond, supra,* 56 *N.J.* at 14–15, 264 *A.2d* at 207–08; *Ricciardi, supra,* 45 *N.J.* at 61–62, 211 *A.2d* at 350–51.

That is not to say that off-premises employees are to be treated differently from on-premises employees. Simply put, on-premises employees are not within the scope of employment until they arrive at the employer's place of business, and they shed that status when they depart. Because off-premises employees may not report to a single "premises," the statute provides that they are to be compensated only for accidents occurring in the direct performance of their duties. Those are *not* different standards but only *descriptors of the same standard in different contexts.* Employees who are where they are supposed to be, doing what they are supposed to be doing, are within the course of employment whether on- or off-premises, except when they are commuting. *See Livingstone, supra,* 111 *N.J.* at 95, 543 *A.2d* at 48–49 (citing *Bryant, Adm'x v. Fissell,* 84 *N.J.L.* 72, 74–75, 86 *A.* 458, 459–60 (Sup.Ct.1913)). Nothing in *N.J.S.A.* 34:15–36 suggests that the Legislature intended to create a higher bar for determining scope of employment for off-premises employees than for those whose regular work location is at the employer's place of business.

Nor do we suggest that the minor deviation rule was eliminated by the 1979 amendments. Off-premises employees enjoy the same ability to deal with certain basic needs enjoyed by on-premises employees such as phone calls to babysitters and physicians as well as coffee and lunch breaks. Although the line is difficult to draw, those minor deviations are different in kind from shopping excursions during lunch hour or a visit to a travel agent to plan a vacation, even when the agent works in the same building as the employee seeking benefits. Whether the employer

allowed the employee to perform a personal errand during his or her workday does not alter the analysis. In cases involving an alleged minor deviation, the question is not whether the off-premises employee was "satisfying a personal need, the completion of which is neither incidental to his ... employment ... nor beneficial to the employer," *ibid.*, but rather, whether that employee has embarked on a personal errand that would have been compensable if carried out by an on-premises employee.[1]

We agree with the Appellate Division, then, that whether "petitioner ... worked on the road ... [or] from a specified site[ ] is not significant." *Jumpp, supra,* 351 *N.J.Super.* at 52, 796 *A.*2d at 950. We also agree that petitioner's "deviation was no different from the office worker who takes an afternoon break and crosses the street to pick up his personal mail at the local post office." *Ibid.* Neither deviation would be compensable.

### IV

For the foregoing reasons, the decision of the Appellate Division is affirmed.

LONG and ZAZZALI, JJ., dissenting.

We agree with the majority that:

[O]n-premises employees are not within the scope of employment until they arrive at the employer's place of business, and they shed that status when they depart. Because off-premises employees may not report to a single "premises," the statute provides that they are to be compensated only for accidents occurring in the direct performance of their duties. Those are *not* different standards but only descriptors of the same standard in different contexts. Employees who are where they are supposed to be, doing what they are supposed to be doing, are within the course of employment whether on- or off-premises, except when they are commuting. Nothing in *N.J.S.A.* 34:15–36 suggests that the Legislature intended to create

---

[1] We do not believe, as does the dissent, that going to a post office to get personal mail is equivalent to the on-premises employee who gets personal mail at work. *Post* at 485–86, 828 *A.*2d at 913–14. Petitioner, after all, began his day at a fixed location where he, also, could have picked up or deposited personal mail.

a higher bar for determining scope of employment for off-premises employees than for those whose regular work location is at the employer's place of business.

[*Ante* at 483–84, 828 *A.*2d at 912–13 (citation omitted).]

We likewise agree that "[o]ff-premises employees enjoy the same ability to deal with certain basic needs enjoyed by on-premises employees such as phone calls to babysitters and physicians as well as coffee and lunch breaks." *Ante* at 483, 828 *A.*2d at 912. We believe, however, that the majority misapplies the minor deviation rule and therefore distinguishes improperly between on- and off-premises employees.

Importantly, the majority concedes that it does not "suggest that the minor deviation rule was eliminated by the 1979 amendments [to the Workers' Compensation Act]." *Ante* at 483, 828 *A.*2d at 912. Professor Larson has characterized minor deviations as

largely the kind of momentary diversions which, if undertaken by an inside employee working under fixed time and place limitations, would be compensable under the personal comfort doctrine. For, while crossing a street may seem to be a more conspicuous deviation than crossing a room, there is really no difference in principle between the trucker, whose work-place is the street, who crosses the street for a glass of beer, and an inside worker who goes an equal distance down the hall to get a cola drink from the cola machine or across the street for a quick cup of coffee.

[1 Arthur Larson, *Larson's Workers' Compensation Law* § 17.06[3] at 17–41 (2003) (footnotes omitted).]

No one, including the majority, would argue that an on-premises employee who walks across the room to the mail basket, retrieves a personal letter addressed to him at work, and is injured on the way back to his desk, should be denied coverage. That fact pattern is analogous to what occurred here. Jumpp had permission from his employer to routinely stop to retrieve his mail from a post office located on his route. On the day in question, he exited his employer's vehicle, which he left running, and entered the post office to get his mail. As he returned to the vehicle, he slipped and fell on the ground, fracturing his pelvis. *Ante* at 474, 828 *A.*2d at 907.

In *Secor v. Penn Service Garage,* we formulated the minor deviation rule as follows:

> Despite occasional suggestions to the contrary it is now well settled in our State and elsewhere that an employee is not deprived of the benefits of the Compensation Act simply because he was not actually working when the accident occurred. He may have stopped work to have a smoke, or to get some fresh air, or to use the telephone, or to satisfy other human needs incidental to his being at his place of employment; it is clear that injuries which occur during such minor deviations are generally sufficiently related to the employment to call for compensation. Similarly, employees may stop work to satisfy their interest in a passing parade or in a strange object or their curiosity generally; here Larson suggests that so long as the deviation is minor it should be disregarded.
>
> [19 *N.J.* 315, 321, 117 *A.*2d 12, 15 (1955) (citations omitted).]

Applying that rule to the facts of this case and in view of this Court's liberal construction of the workers' compensation statute, *Brunell v. Wildwood Crest Police Dep't,* 176 *N.J.* 225, 235, 822 *A.*2d 576, 581–82 (2003), we conclude that Jumpp was within the course of employment at the time he sustained his injuries. In our view, Jumpp's trip to the post office was "so small" or "insubstantial" a deviation that he remained within the course of his employment throughout the performance of that errand.

The only residual question is whether Jumpp's injury "ar[ose] out of" his employment. *N.J.S.A.* 34:15–7. Because the courts below did not address that issue, we would reverse and remand to the trial court for further proceedings.

*For affirmance*—Chief Justice PORITZ, and Justices COLEMAN, VERNIERO and LaVECCHIA—4.

*For reversal and remandment*—Justices LONG and ZAZZALI—2.